19-2547-cv
*SM Kids, LLC v. Google LLC*

# In the
# United States Court of Appeals
## For the Second Circuit

August Term 2019

No. 19-2547-cv

SM KIDS, LLC, AS SUCCESSOR-IN-INTEREST TO STELOR
PRODUCTIONS, LLC,

*Plaintiff-Appellant,*

v.

GOOGLE LLC, ALPHABET INC., XXVI HOLDINGS INC., JOHN AND/OR
JANE DOES 1-100, INCLUSIVE,

*Defendants-Appellees.*\*

Appeal from the United States District Court
for the Southern District of New York
No. 18-cv-2637,
Lorna G. Schofield, District Judge, Presiding.
(Argued March 12, 2020; Decided June 25, 2020)

Before:     PARKER and LOHIER, *Circuit Judges*, and EATON, *Judge.*†

---

\* The Clerk of Court is directed to amend the caption to conform to the above.
† Richard K. Eaton, Judge of the United States Court of International Trade,
sitting by designation.

Plaintiff-Appellant SM Kids, LLC sued Google LLC and several related entities, seeking to enforce a 2008 agreement settling a trademark dispute. Defendants-Appellees moved to dismiss for lack of standing, pursuant to Fed. R. Civ. P. 12(b)(1), arguing that SM Kids did not own the subject trademark, as it had been improperly assigned by SM Kids' predecessor, which had executed the settlement agreement. The United States District Court for the Southern District of New York (Schofield, *J.*) received evidence on the matter, found that the trademark assignment was invalid, and dismissed for lack of subject-matter jurisdiction. We hold that the validity of the trademark was not a jurisdictional matter related to Article III standing but was instead a merits question properly addressed on a motion under Fed. R. Civ. P. 12(b)(6), a motion for summary judgment, or at trial. Accordingly, we **VACATE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion.

JOHN M. MAGLIERY (Geoffrey S. Brounell, L. Danielle Toaltoan, *on the brief*), Davis Wright Tremaine LLP, New York, NY, *for Plaintiff-Appellant*.

BRENDAN J. HUGHES (Rebecca Givner-Forbes, Ian R. Shapiro, *on the brief*), Cooley LLP, Washington, DC, *for Defendants-Appellees*.

BARRINGTON D. PARKER, *Circuit Judge*:

SM Kids, LLC appeals from a judgment of the United States District Court for the Southern District of New York (Schofield, *J.*) dismissing its complaint alleging breach of a settlement agreement for lack of Article III standing. *See* Fed. R. Civ. P. 12(b)(1). The district court concluded that it lacked jurisdiction because SM Kids had not been validly assigned the trademark that was the subject of the

settlement by the trademark's prior owner. We hold that the question of whether the trademark assignment was valid was a merits and not a jurisdictional question. Accordingly, we **VACATE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion.

The facts as found by the district court are as follows.[1] In 1995, Steven Silvers created the Googles brand. Two years later, he registered the Googles trademark and the internet domain name www.googles.com. The website launched in 1998 as a children's education and entertainment website. That year, the search engine Google adopted the Google name. Subsequently, in 2005, Silvers sued Google for trademark infringement. In February 2007, Silvers assigned all rights in Googles to Stelor Productions, LLC. In December 2008, Google and Stelor settled the trademark infringement litigation.

As the trademark infringement litigation unfolded, in 2006 Stephen Garchik invested in Stelor. The company soon defaulted on Garchik's loans. Following a bankruptcy proceeding, in 2011 Stelor assigned the "entire interest and the goodwill" of the Googles trademark to Garchik, doing business as

---

[1] Because Google brought its motion under Rule 12(b)(1), the district court relied on materials outside the pleadings and made factual findings. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). We address a question of law but refer to the district court's findings for relevant background information.

Stelpro Loan Investors, LLC. Sp. App'x at 7. By that point, the Googles website remained operational, but there is some evidence that its content was static and quickly grew outdated. In January 2013, Garchik transferred the Googles assets to SJM Partners, a company of which he is the sole owner. Following this transfer, Garchik replaced the Googles website with a "coming soon" page, posted a solicitation for joint venture partners, and added some audiovisual content. Finally, in February 2018, SJM Partners transferred the Googles assets to Plaintiff-Appellant SM Kids, a newly formed firm owned by Garchik.

In February 2018, SM Kids sued Google LLC, Alphabet Inc., XXVI Holdings Inc., and 100 John and/or Jane Doe defendants (collectively, "Google") in New York County Supreme Court, alleging that Google had breached the 2008 settlement agreement. That agreement prohibited Google from "intentionally mak[ing] material modifications to its [then-]current offering of products and services in a manner that is likely to create confusion in connection with [Googles]." J. App'x at 57-58. More specifically, Google agreed not to "create, develop and publish children's books, fictional children's videos, or other fictional children's related content that have a title of 'GOOGLE' or a 'GOOGLE-' formative title or mark." *Id.* at 58.

4

The complaint alleged that Google had breached that agreement by creating Google Play and YouTube Kids, which publish and distribute children's content. SM Kids further objected to Google's acquisition of several children's entertainment businesses, including Launchpad Toys and the "Toontastic" application.

Google, invoking diversity jurisdiction, removed the lawsuit to the Southern District of New York, where it moved to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6). Principally, Google argued that SM Kids lacked standing to sue because it never validly acquired the Googles trademark, and only the holder of that trademark could enforce the settlement agreement. Before the motion was fully briefed, the district court denied it without prejudice and ordered that discovery be stayed except as to the issues of standing and subject-matter jurisdiction. SM Kids unsuccessfully objected to this procedure on the ground that the validity of the trademark assignment was a merits rather than a jurisdictional question.

Google took discovery from SM Kids and then renewed its motion to dismiss, pursuant only to Rule 12(b)(1). Relying on materials outside the complaint that had been generated during discovery, the district court found that

SM Kids had not shown by a preponderance of the evidence that it had validly acquired the trademark. The court held that a valid assignment requires that the mark be used in commerce and found that the mark was not used in commerce from 2010 to 2018, when it was assigned to SM Kids. Specifically, it found that the Googles website had not been used to identify goods or services sold to consumers because it was merely a "coming soon" page. Treating this deficiency as jurisdictional, the district court granted the motion to dismiss. This appeal followed.

**DISCUSSION**

A motion to dismiss for lack of Article III standing challenges the subject-matter jurisdiction of a federal court and, accordingly, is properly brought under Fed. R. Civ. P. 12(b)(1). *See Carter v. HealthPort Techs. LLC*, 822 F.3d 47, 56 (2d Cir. 2016). When a motion under Rule 12(b)(1) is based solely on the complaint and the attached exhibits, the plaintiff bears no evidentiary burden, and the district court must evaluate whether those documents allege facts that plausibly suggest that the plaintiff has standing to sue. *Id.* We review the grant of such a motion de novo. *Id.* However, a motion under Rule 12(b)(1) may also rely on evidence beyond the pleadings. *Id.* at 57. When a defendant makes such a fact-based

6

motion, the plaintiff may respond with evidence of its own. *Id.* We then review the district court's legal conclusions de novo and its factual findings for clear error. *Makarova*, 201 F.3d at 113. In this case, the district court relied on evidence outside the pleadings. Nonetheless, the question we address on review is exclusively a question of law and, consequently, our review is de novo. *See Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187 n.3 (2d Cir. 2013).

## I.

Article III, Section 2 of the Constitution limits the subject-matter jurisdiction of the federal courts to "Cases" and "Controversies." *E.g.*, *Dhinsa v. Krueger*, 917 F.3d 70, 77 (2d Cir. 2019). The standing doctrine, which emerges from Article III, is designed "to ensure that federal courts do not exceed their authority as it has been traditionally understood." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The doctrine imposes three requirements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.*

In its motion to dismiss, Google argued that SM Kids lacked Article III standing because it was not the holder of the Googles trademark. More

specifically, it contended that a trademark is assignable only "with the good will of the business in which the mark is used," and the mark must be in "actual use in the marketplace" and "employed to identify goods or services sold to consumers in a given market." 15 U.S.C. § 1060(a)(1); *Cross Commerce Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 167 (2d Cir. 2016); *Berni v. Int'l Gourmet Rests. of Am., Inc.*, 838 F.2d 642, 646 (2d Cir. 1988).

Google contended that the Googles mark had not been used in commerce and, therefore, could not be assigned to SM Kids. Because SM Kids was not the holder of the mark, Google reasoned, it had no rights under the settlement agreement and did not have a legally protected interest whose impairment could be redressed in a lawsuit. In other words, it had not suffered an injury in fact. The district court agreed and concluded that, because SM Kids lacked Article III standing, the court did not have subject-matter jurisdiction.

We do not agree that the validity of the assignment was a question of Article III standing. Instead, the question was one of contractual standing, which asks a different question: whether a party has the right to enforce a contract. Contractual standing is distinct from Article III standing and does not implicate subject-matter jurisdiction. Article III standing speaks to the power of a court to

adjudicate a controversy; contractual standing speaks to a party's right to relief for breach of contract. Although the question of whether Google breached a contract with SM Kids depends on whether SM Kids enjoyed a contractual relationship with Google, the existence of such a relationship is not a prerequisite to a court's power to adjudicate a breach-of-contract claim.

SM Kids produces content under the name Googles, and it alleges that Google confusingly produces similar content under its own name, in breach of a contract. SM Kids plausibly alleges that the availability of Google's content— which allegedly violates the settlement agreement—has injured the popularity of Googles content and thereby caused it economic injury. That injury could be redressed by injunctive or monetary relief. As a result, the three requirements of Article III standing are satisfied.

Whether Google might have a defense based on trademark or contract law does not change this result. A contest between a plausibly alleged claim and a defense exists in many, if not most, breach-of-contract lawsuits, and typically, one party wins and the other loses. Under Google's approach, courts would lack

jurisdiction in most instances where a breach-of-contract plaintiff failed to prove the existence of a contract.[2]

The Supreme Court has confirmed that a challenge does not implicate Article III standing when it "simply presents a straightforward issue of contract interpretation." *Perry v. Thomas*, 482 U.S. 483, 492 (1987). Whether the elements of breach of contract, including the existence of a contract, are satisfied, that Court has said, goes to the merits, not to a court's power to resolve the controversy. In *Perry*, the petitioners invoked federal jurisdiction to compel arbitration. The respondent contended that two of the petitioners lacked standing because they were not parties to the arbitration agreement. The Court rejected the contention that resolving that issue was a prerequisite to Article III standing. Constitutional standing, the Court reasoned, was not the threshold inquiry when a litigant's contention was that his opponents were not parties to an agreement. Because contractual standing goes to the merits, and "[o]ur threshold inquiry into

---

[2] Under Fed. R. Civ. P. 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." "Where a court lacks subject matter jurisdiction, it also lacks the power to dismiss with prejudice." *Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir. 1999). Treating contract formation as jurisdictional would therefore call into question a federal court's ability to issue a claim-preclusive judgment that a contract did not exist.

standing 'in no way depends on the merits of the [plaintiff's] contention that particular conduct is illegal,'" contractual standing is not a matter of constitutional standing. *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)); *see also Bond v. United States*, 564 U.S. 211, 219 (2011) ( "[T]he question whether a plaintiff states a claim for relief 'goes to the merits' in the typical case, not the justiciability of a dispute . . . ." (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 92 (1998))).

Our cases reach the same conclusion. In *Carver v. City of New York*, 621 F.3d 221, 226 (2d Cir. 2010), we held that "[t]he standing question is distinct from whether [a plaintiff] has a cause of action." We have cautioned against arguments that "would essentially collapse the standing inquiry into the merits," *Baur v. Veneman*, 352 F.3d 625, 642 (2d Cir. 2003), and attempts to "conflate the threshold question of [the plaintiff's] standing under Article III . . . with the question of whether [he] has a valid claim on the merits," *Lerman v. Bd. of Elections*, 232 F.3d 135, 143 n.9 (2d Cir. 2000).[3] This body of law means that a

---

[3] The other circuits are in accord that contractual standing goes to the merits of a claim rather than to the existence of subject-matter jurisdiction. *Rocky Mountain Helium, LLC v. United States*, 841 F.3d 1320, 1324-25 (Fed. Cir. 2016); *Cotton v. Certain Underwriters at Lloyd's of London*, 831 F.3d 592, 594-96 (5th Cir. 2016); *Cornhusker Cas. Co. v. Skaj*, 786 F.3d 842, 851 (10th Cir. 2015); *Lindsey v. Starwood*

party that alleges harm due to another's breach of a contract has a justiciable controversy with the other party and that the courts have jurisdiction to resolve the controversy. *See United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 528 (2d Cir. 1999).

## II.

Additional support for this conclusion comes from the Supreme Court's decisions cautioning lower courts from reading jurisdictional limitations into substantive statutory provisions. The relevant provision of the Lanham Act on trademark assignments, 15 U.S.C. § 1060, provides that a trademark is assignable only "with the good will of the business in which the mark is used." It requires that the mark be used in commerce. *Cross Commerce Media*, 841 F.3d at 167. As noted, the district court treated this section as a jurisdictional hurdle. It reasoned that because the Googles mark was not used in commerce, SM Kids could not have been validly assigned the trademark and consequently the court lacked subject-matter jurisdiction.

---

*Hotels & Resorts Worldwide Inc.*, 409 F. App'x 77, 78 (9th Cir. 2010) (memorandum opinion); *Novartis Seeds, Inc. v. Monsanto Co.*, 190 F.3d 868, 871 (8th Cir. 1999).

But § 1060 does not mention jurisdiction. The Supreme Court has emphasized that federal courts should not treat statutory provisions as jurisdictional thresholds when they do not speak in jurisdictional terms. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982). *Arbaugh v. Y&H Corp.*, for example, held that an element of a statutory claim was not jurisdictional when the plaintiff pleaded "a colorable claim 'arising under' the Constitution or laws of the United States," absent a contrary indication of congressional intent.[4] 546 U.S. 500, 513 (2006). A statutory requirement should be treated as jurisdictional, the Court went on to say, only when Congress "clearly states" as much and "duly instruct[s]" courts and litigants that the issue is jurisdictional. *Id.* at 515. If this language is not present, and Congress does not rank a statutory limitation as jurisdictional, courts should treat the restriction as nonjurisdictional in character. This rule is designed to be a "readily administrable bright line" test. *Id.* at 516. Nothing in § 1060 suggests that Congress intended to limit the broad grant of federal question jurisdiction in § 1331 and diversity jurisdiction in § 1332 as to

---

[4] This result does not change because this case arises under diversity, rather than federal question, jurisdiction. *Arbaugh* articulates the general rule that "statutory limitations should not be understood to limit the subject matter jurisdiction of the courts unless that is the 'clearly' stated intention of the statute." *United States v. Prado*, 933 F.3d 121, 135 (2d Cir. 2019). Congress must clearly state such an intention anytime it imposes a jurisdictional limitation.

13

exclude cases where trademarks were assigned without accompanying good will. *See Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 623 F.3d 61, 71 (2d Cir. 2010) (holding that when claims arise under the Lanham Act, "jurisdiction exists not only over the infringement claims but also over the antecedent issue of the validity of the assignment"); *Berni*, 838 F.2d at 645-46 (treating "standing" under the Lanham Act as nonjurisdictional); *cf. Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 161-62 (2010) (citing *Arbaugh* in holding that the Copyright Act's registration requirement is not jurisdictional).

In *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867 (9th Cir. 2014), the court considered a "use in commerce" provision of the Lanham Act, which is similar to the requirement of use in commerce in § 1060, the "good will" provision at issue here. The court held that this provision was an element of a Lanham Act claim rather than a jurisdictional requirement. *Id.* at 873. The court explained that because the "use in commerce" element of claims under Sections 32 and 43(a) of the Act was not structurally connected to the statute's jurisdictional grant, 15 U.S.C. § 1121, "use in commerce" was a substantive element and not a jurisdictional issue. *La Quinta*, 762 F.3d at 873. Section 1060 similarly lacks a structural connection to § 1121 and mentions no limitation on

14

the availability of jurisdiction under 28 U.S.C. § 1331 or § 1332. Consequently, it is not jurisdictional. *Cf. Spokeo*, 136 S. Ct. at 1549 (emphasizing that whether a plaintiff has a cause of action under a statute does not determine whether it possesses Article III standing); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014) (same).

## III.

Google urges us that any error in the procedures used by the district court was harmless because it reached a correct result. Maybe so, maybe not: but we are not now at that point. Because the court resolved Google's motion as a fact-based motion under Rule 12(b)(1), it considered evidence beyond the complaint. It also placed on SM Kids the burden of proving subject-matter jurisdiction. Had the district court treated the motion as one under Rule 12(b)(6), its review would, of course, have been limited to the complaint, to documents attached to the complaint or incorporated by reference, and to documents of which the district court could have taken judicial notice. In addition, the facts alleged in the complaint would have been accepted as true and all factual inferences drawn in SM Kids' favor. SM Kids, on the other hand, would have been required to plead

only a plausible claim to relief and the burden to show otherwise would have fallen on Google. *See Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003).

In the alternative, if the district court received and elected not to exclude matters outside the pleadings, Rule 12(d) presented it with only two options: exclude the additional material or convert the motion to one for summary judgment. *See Palin v. N.Y. Times Co.*, 940 F.3d 804, 810-11 (2d Cir. 2019). At that point, Google would have borne the burden under Rule 56(a) of demonstrating the absence of a genuine issue of material fact.

We have no doubt that the able district judge's approach was animated by entirely understandable concerns of efficiency intended to save the time and resources of the parties and the court. But rules matter, and procedural regularity and evenhandedness matter, as well. "[D]espite the flexibility that is accorded district courts to streamline proceedings and manage their calendars, district courts are not free to bypass rules of procedure that are carefully calibrated to ensure fair process to both sides." *Id.* at 812.

Suffice it to say, we do not speculate about what results procedures not followed might have yielded. Nor do we reach the questions of validity of the

16

assignment of the Googles mark and whether SM Kids possesses contractual standing. Instead, we remand to the district court.

**CONCLUSION**

For the foregoing reasons, the judgment of the district court is **VACATED**, and the case is **REMANDED** for further proceedings consistent with this opinion.