22-1054 (L)
*Snowbridge Advisors v. Soho Square*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of The United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of December, two thousand twenty-three.

PRESENT:
> SUSAN L. CARNEY,
> BETH ROBINSON,
> *Circuit Judges.*[*]

_____

SNOWBRIDGE ADVISORS LLC, SNOWBRIDGE
SECURITIES LLC,

> *Plaintiffs-Appellants-Cross-Appellees,*

> v.                                        Nos. 22-1054,
>                                                22-1069

_____

[*] Circuit Judge Rosemary S. Pooler who was a member of the panel, died on August 10, 2023. The two remaining members of the panel, who are in agreement, have determined to issue this summary order. *See* 28 U.S.C. § 46(d); 2d Cir. IOP E(b).

SOHO SQUARE CAPITAL LLP, FKA ESO
CAPITAL ADVISORS LLP, FKA CORE CAPITAL
PARTNERS LLP,

     *Defendant-Appellee-Cross-Appellant*,

ESO CAPITAL PARTNERS LLP,

     *Defendant-Appellee*,

ALEXANDER SCHMID, WALID FAKHRY,
STEPHEN S. EDWARDS,

     *Defendants.*

_____

| | |
|---|---|
| FOR APPELLANTS-CROSS APPELLEES: | ROGER E. BARTON, Randall L. Rasey, Barton LLP, New York, NY. |
| FOR APPELLEE-CROSS APPELLANT: | JONATHAN B. NEW, Nicholas M. Rose, Madison J. Gaudreau, Baker & Hostetler LLP, New York, NY. |
| FOR APPELLEE: | MARK R. SEIDEN, Meir Feder, Alexander J. Gonzalez, Jones Day, New York, NY. |

Appeal from a judgment of the United States District Court for Southern

District of New York (Rakoff, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED,**

**ADJUDGED, AND DECREED** that the judgment entered on April 12, 2022, is

**AFFIRMED** and the appeal of Defendant-Appellee-Cross-Appellant is **DISMISSED** as moot.

Plaintiffs-Appellants-Cross-Appellees Snowbridge Advisors LLC and Snowbridge Securities LLC (collectively, the "Snowbridge Entities") appeal from a judgment dismissing their complaint asserting distinct breach of contract claims on behalf of Snowbridge Advisors and Snowbridge Securities, respectively.[1] We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm the judgment of the District Court with respect to the Snowbridge Entities' respective breach of contract claims and to dismiss the appeal of Defendant-Appellee-Cross-Appellant Soho Square Capital LLP ("Soho Square") as moot.

On October 1, 2018, ESO Capital Partners LLP ("ESO Partners"), an investment management firm focusing on assets in the United Kingdom and Northern Europe, entered into a letter agreement (the "Agreement") with

---

[1] Although Snowbridge Advisors is listed in the Snowbridge Entities' shared notice of appeal, the Snowbridge Entities' appellate briefs include no argument addressing the district court's judgment with respect to *Snowbridge Advisors*. Accordingly, any challenge to the judgment dismissing Snowbridge Advisors' claims is waived. *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal.").

Snowbridge Advisors, a financial advisory firm, and DCS Advisory LLC ("DCS"), a licensed broker-dealer firm, to manage the placement of interests in an investment fund (the "Fund") controlled by ESO Partners.[2] The Agreement provided the following basic description of the three parties' respective roles:

> DCS Advisory LLC ("DCS Advisory") is pleased to act as exclusive financial advisor to ESO Capital Partners UK LLP (the "Company") and to act as exclusive placement agent in North America in connection with the proposed private placement (the "Placement"), whether through one or a series of transactions, of interests (the "Securities") in [the Fund]. This letter agreement (the "Agreement") confirms the terms of our engagement. . . . Members of Snowbridge Advisors LLC ("Snowbridge") will participate in the offering as associated persons of DCS Advisory, and, however, for the avoidance of doubt, no Securities will be placed through Snowbridge.

J. App'x 36.[3]

It further required "DCS Advisory, using commercially reasonable efforts," to provide advice and assistance to ESO Partners with respect to numerous subjects, including "the form and structure of the Fund," "identifying

---

[2] Alexander Schmid founded ESO Partners in 2006 and was at all relevant times CEO of the company. In May 2018, ESO Partners acquired Core Capital Partners LLP, a private equity fund founded by Walid Fakhry and Stephen Edwards. Fakhry and Edwards joined Schmid on the ESO Partners management board after the acquisition. In December 2020, Core Capital Partners LLP changed its name to ESO Capital Advisors LLP. It changed its name again in October 2021 to Soho Square Capital LLP.

[3] In quotations from caselaw and the parties' briefing, this opinion omits all internal quotation marks, alterations, footnotes, and citations, unless otherwise noted.

prospective investors," and "assisting . . . in the placement of Securities" with those investors. *Id.* at 36–37. Snowbridge Advisors agreed that its individual members "will participate in the [securities] offering as associated persons of DCS Advisory." *Id.* at 36. The Agreement provided for the payment of fees to DCS, including a €300,000 Work Fee, a €30,000 monthly Advisory Fee, and a Placement Fee of at least €3,000,000 that could increase in proportion to the Fund's success. *Id.* at 37–38. The Agreement also contained a choice of law provision selecting New York law. *Id.* at 46.

Section 13 of the Agreement, titled "Miscellaneous," provided in part that "Snowbridge [Advisors] shall have the right to assign the rights and obligations under this Agreement" to a fully licensed broker-dealer affiliated with Snowbridge Advisors "in its sole discretion," or to another broker-dealer with ESO Partners' consent, not to be unreasonably withheld. J. App'x 47.

In September 2019, almost a year after the Agreement became effective in October 2018, Snowbridge Advisors formed Snowbridge Securities—a licensed broker-dealer firm—and, as alleged in the Complaint, "transferred its securities transactions" from DCS Advisory to that new entity. *Id.* at 16. Snowbridge Advisors sent to ESO Partners, copying DCS, a letter dated September 12, 2019, titled "Notice of Engagement Agreement Assignment." *Id.* at 59. Invoking

Section 13 of the Agreement, Snowbridge Advisors informed ESO Partners that it had "assigned the rights and obligations of [DCS] under the Agreement to [Snowbridge Securities]," and that Snowbridge Securities "assumed all of [DCS's] rights and obligations under the Agreement." *Id.* Snowbridge Securities alleges that after November 2019, ESO Partners failed to pay it any monthly Advisory Fees and failed to pay the €3,000,000 Placement Fee that was due under the contract; further, ESO Partners missed its closing targets and the Fund underperformed.

Two years later, in November 2021, the Snowbridge Entities filed a complaint in the Southern District of New York naming ESO Partners, Soho Square, Alexander Schmid, Walid Fakhry, and Stephen Edwards as defendants. The complaint advanced six causes of action, including breach of contract against ESO Partners for failure to pay the above-mentioned fees and failure "to cause the Fund to execute a Joinder to the Agreement," *id.* at 29; breach of contract against Soho Square under a successor liability theory; and a demand for a judgment declaring that ESO Partners and Soho Square remained obligated to pay the Snowbridge Entities the outstanding fees.

In December 2021, Soho Square, Fakhry, and Edwards moved to dismiss the claims against them for lack of personal jurisdiction and for failure to state a

claim.  The district court granted the motion to dismiss the claims against Fakhry

and Edwards and dismissed certain of the claims against Soho Square but denied

dismissal of the breach of contract claim against Soho Square.[4]  ESO Partners and

Soho Square each again moved to dismiss in early 2022.  The district court

granted both motions.  Applying New York law, the court dismissed

Snowbridge Securities' breach of contract claims for lack of Article III standing.

"[T]he language of the Agreement unambiguously preclude[d]" Snowbridge

Advisors' purported assignment of DCS's rights to Snowbridge Securities, the

court ruled, with the effect that Snowbridge Securities was not a party to the

Agreement and could not sue to enforce any of its provisions.  *Snowbridge*

*Advisors*, 2022 WL 1093194, at *6–7  (analyzing whether Snowbridge Securities

"establish[ed] Article III standing").  The court declined to consider the

Snowbridge Entities' request for declaratory relief, deeming it "duplicative of the

breach of contract" claims.  *Id.* at *8.

The Snowbridge Entities now appeal, challenging only the district court's

conclusion that the purported assignment to Snowbridge Securities was

ineffective and its resulting judgment against Snowbridge Securities on its breach

---

[4] The Snowbridge Entities then voluntarily dismissed without prejudice their claims against Alexander Schmid.

of contract claim. Soho Square cross-appeals, assailing the district court's denial of its December 2021 motion to dismiss the breach of contract claim brought by the Snowbridge Entities against it.

"We review *de novo* the district court's dismissal of a complaint for lack of standing under Fed. R. Civ. P. 12(b)(1) and 12(b)(6)." *Klein & Co. Futures v. Bd. of Trade of City of New York*, 464 F.3d 255, 259 (2d Cir. 2006). We also review *de novo* "the district court's determination of whether a contract is ambiguous . . . and, as to an unambiguous contract, the district court's interpretation of its terms." *Law Debenture Trust Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 468 (2d Cir. 2010).

We first address whether Snowbridge Securities established that it had Article III standing to pursue its breach of contract claim. We think it did. The District Court rested its conclusion to the contrary on its merits determination that the Agreement did not give Snowbridge Advisors the authority to assign DCS's rights to Snowbridge Securities, and determined therefore that Snowbridge Securities had no standing to sue. We have explained, however, that "the validity of [an] assignment" is not a "question of Article III standing"; rather, it is a question of "contractual standing, which asks a different question: whether a party has the right to enforce a contract." *SM Kids, LLC v. Google LLC*,

8

963 F.3d 206, 211 (2d Cir. 2020); *see also Perry v. Thomas*, 482 U.S. 483, 492 (1987) (describing a putative "'standing' argument" as "present[ing] a straightforward issue of contract interpretation"); *Carver v. City of New York*, 621 F.3d 221, 226 (2d Cir. 2010) ("The standing question is distinct from whether [plaintiff] has a cause of action."). The District Court thus erred in treating this contract question as one implicating Article III standing.

Here, we are satisfied that Snowbridge Securities has Article III standing; it adequately alleged injury-in-fact—a claim for financial loss arising from an asserted breach of contract by ESO Partners that is redressable by a judicial award of damages. *See Spokeo v. Robins*, 578 U.S. 330, 338 (2016) ("The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."). And Snowbridge Securities' breach of contract claim "simply presents a straightforward issue of contract interpretation." *SM Kids, LLC*, 963 F.3d. at 212 (quoting *Perry*, 482 U.S. at 492). Accordingly, having reassured ourselves of our jurisdiction in this appeal, we focus our review on whether Snowbridge Securities stated a plausible claim for breach of contract. As to this issue, we agree with the district court that it did not.

In a dispute over contract interpretation under New York law, the threshold question is whether the contract language is ambiguous.  *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011).  To determine whether contract language is ambiguous, we "look[] within the four corners of the document, not to outside sources."  *Id.*  While we may not dismiss a contract claim "predicated on a materially ambiguous contract term," when an agreement is "complete, clear and unambiguous on its face, it must be enforced according to the plain meaning of its terms."  *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177–78 (2d Cir. 2004).

Paragraph 13 of the Agreement provides:

This Agreement (including the Appendices, Schedule I and the Exhibits) shall be binding upon DCS Advisory, Snowbridge, the Company and the Fund and their respective successors and assigns and any successor or assign of any substantial portion of the Company's, the Fund's and DCS Advisory's respective businesses and/or assets.  The obligations of the Company hereunder shall be the joint and several obligations of the Company and the Fund.  **Notwithstanding the foregoing, neither the Company nor the Fund may assign or otherwise transfer any of its rights and obligations under this Agreement without the prior written consent of Snowbridge and DCS Advisory and any purported assignment or other transfer of any such rights and obligations without such consent shall be null and void; provided, that the Company, the Fund, Snowbridge and DCS Advisory acknowledge and agree that Snowbridge shall have the right to assign the rights and obligations under this Agreement to (i) a fully licensed broker-dealer affiliated with Snowbridge in Snowbridge's sole discretion, or (ii) another**

10

**broker dealer with the written consent of the Company, not to be unreasonably withheld**.

J. App'x at 46–47 (emphasis added).

Snowbridge Securities argues that this provision unambiguously granted Snowbridge Advisors the right to assign to Snowbridge Securities DCS's right to receive compensation under the Agreement. We are not persuaded.

In the contracting context, the word "assign" refers to the transfer of a right by the owner of the right. Restatement (Second) Contracts § 317; *St. John Marine Co. v. United States*, 92 F.3d 39, 47 (2d Cir. 1996). Under New York law, "an assignee stands in the shoes of its assignors," and thus "the assignee cannot claim rights in the property that were not the assignor's to give." *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 55 (2d Cir. 2011); *see also New York & Presbyterian Hosp. v. Country-Wide Ins. Co.*, 17 N.Y.3d 586, 592 (2011) ("[I]t is elementary ancient law that an assignee never stands in any better position than his assignor. . . . [Y]ou cannot assign your right to benefits . . . if you had no right to those benefits in the first place.").

To be sure, as Soho Square concedes, DCS *could* have consented by contract to allow Snowbridge Advisors to assign DCS's rights and obligations under the Agreement to another licensed broker-dealer. Snowbridge Securities

11

contends the Agreement reflects just such a consent.  But consent for an independent party to assign one's valuable rights, and, by extension, consent to give up one's own rights, must be clearly expressed.  *Cf. Pro. Staff Congress-City Univ. of New York v. New York State Pub. Emp. Rels. Bd.*, 7 N.Y.3d 458, 465, (2006) (A party's intention to relinquish its contractual rights must be "clear, unmistakable, and without ambiguity.").  Given these principles, the Agreement's reference to Snowbridge Advisors' right to assign "*the* rights and obligations under the Agreement," J. App'x 47, without any reference to DCS or *its* rights and obligations, is insufficient to create an ambiguity as to whether the Agreement authorized Snowbridge Advisors to assign DCS's rights and obligations.  It did not.

Because any purported assignment by Snowbridge Advisors to Snowbridge Securities of DCS's right to compensation under the Agreement was invalid, Snowbridge Securities is not a party to this Agreement and therefore cannot sue Soho Square for breach of that Agreement.

Because we affirm the dismissal of the complaint, Soho Square's cross-appeal of the denial of its December 2021 motion to dismiss is dismissed as moot.

* * *

12

We have considered the Snowbridge Entities' remaining arguments and conclude they are without merit. For the foregoing reasons, the district court's judgment is **AFFIRMED** and Defendant-Appellee-Cross-Appellant's cross-appeal is **DISMISSED** as moot.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court