21-2526; 21-2448
*Building and Realty Institute v. State of New York, G-Max Management, Inc. v. State of New York*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12th day of March, two thousand twenty-four.

PRESENT:

GUIDO CALABRESI,
DENNY CHIN,
EUNICE C. LEE,
    *Circuit Judges.*

_____

BUILDING AND REALTY INSTITUTE OF WESTCHESTER AND PUTNAM COUNTIES, INC., APARTMENT OWNERS ADVISORY COUNCIL, COOPERATIVE AND CONDOMINIUM COUNCIL, STEPPING STONES ASSOCIATES, L.P., LISA DEROSA, as Principal of Stepping Stones, L.P., JEFFERSON HOUSE ASSOCIATES, L.P., SHUB KARMAN, INC., DILARE, INC., PROPERTY MANAGEMENT ASSOCIATES,

NILSEN MANAGEMENT CO., INC.,

        *Plaintiffs-Appellants*,

        v.                                  21-2526

STATE OF NEW YORK, RUTHANNE
VISNAUSKAS, in her official capacity as
Commissioner of New York State Homes
and Community Renewal, DIVISION OF
HOMES AND COMMUNITY RENEWAL,

        *Defendants-Appellees*,

COMMUNITY VOICES HEARD (CVH),

        *Intervenor-Defendant-Appellee.*

_____

G-MAX MANAGEMENT, INC., 1139
LONGFELLOW, LLC, GREEN VALLEY REALTY,
LLC, 4250 VAN CORTLANDT PARK EAST
ASSOCIATES, LLC, 181 W. TREMONT
ASSOCIATES, LLC, 2114 HAVILAND
ASSOCIATES, LLC, SILJAY HOLDING LLC, 125
HOLDING LLC, JANE ORDWAY, DEXTER
GUERRIERI, BROOKLYN 637-240 LLC, 447-9
16TH LLC,

        *Plaintiffs-Appellants*,

66 EAST 190 LLC,

        *Plaintiff,*

2

v.                                              21-2448

STATE OF NEW YORK, LETITIA JAMES, in her official capacity as Attorney General of the State of New York, RUTHANNE VISNAUSKAS, in her official capacity as Commissioner of the New York State Division of Housing and Community Renewal, WOODY PASCAL, in his official capacity as Deputy Commissioner of the New York State Division of Housing and Community Renewal,

*Defendants-Appellees*,

N.Y. TENANTS AND NEIGHBORS (T&N), COMMUNITY VOICES HEARD (CVH),

*Intervenors-Defendants-Appellees*,

COUNTY OF WESTCHESTER, CITY OF YONKERS, CITY OF NEW YORK,

*Defendants*.

_____

DOROTHY M. FINGER, *Finger & Finger*, White Plains, NY (Kenneth J. Finger, *on the brief*) for *Plaintiffs-Appellants Building and Realty Institute of Westchester and Putnam County, et al.*

RANDY M. MASTRO, *King & Spaulding LLP*, New York, NY (Akiva Shapiro and William J. Moccia of *Gibson, Dunn & Crutcher LLP*, New York, NY, *on the brief*), for *Plaintiffs-Appellants G-Max Management, Inc., et al.*

ESTER MURDUKHAYEVA, *Assistant Deputy Solicitor General* (Barbara D. Underwood, *Solicitor General*, *on the briefs*; Steven C. Wu, *Deputy Solicitor General, on the brief in 21-2448*; Stephen J. Yanni, *Assistant Solicitor General, on the brief in 21-2526*), *for* Letitia James, *Attorney General of the State of New York*, New York, NY, for *Defendants-Appellees State of New York, et al.*

MICHAEL DUKE, *Selendy Gay PLLC*, New York, NY (Caitlin J. Halligan, Sean P. Baldwin, Babak Ghafarzade, Sophie Lipman, Samuel Breidbart, *Selendy Gay PLLC*, New York, NY; Judith Goldner, *Attorney in Charge*, Edward Josephson, *Supervising Attorney*, The Legal Aid Society, Civil Law Reform Unit, New York, NY, *on the briefs*; Ekaterina Stynes of Paul, Weiss, Rifkind, Wharton & Garrison LLP, *on the brief in* 21-2526) for *Intervenors-Defendants-Appellees Community Voices Heard* and *N.Y. Tenants and Neighbors.*

Appeal from a September 14, 2021 judgment of the United States District Court for the Southern District of New York (Karas, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs-Appellants Building and Realty Institute of Westchester and Putnam Counties, Inc., et al. ("BRI") and G-Max Management, Inc., et al. ("G-Max") (collectively, "Appellants") appeal from the district court's judgment dismissing their challenge to the New York Rent Stabilization Laws ("RSL"). On appeal, Appellants argue that the 2019 amendment to the RSL, known as the Housing Stability and Tenant Protection Act ("HSTPA"), violates the Fifth and Fourteenth Amendments of the Constitution, as it effects a taking of their property and violates their substantive due process rights. Appellants also allege a violation of the Contracts Clause of the Constitution.[1]

In an opinion and order dated September 14, 2021, the district court granted

---

[1] Appellants made various other claims at the district court which they do not raise on appeal and are therefore not addressed by this Court.

5

the Defendants' and Defendants-Intervenors' motions to dismiss all of Appellants' claims for failure to state a claim and lack of jurisdiction. *See Bldg. & Realty Institute of Westchester & Putnam Cntys., Inc. v. New York* ("*BRI*"), Nos. 19-CV-11285 (KMK) and 20-CV-634 (KMK), 2021 WL 4198332 (S.D.N.Y. Sept. 14, 2021) ("*BRI*"). The district court addressed the motions filed in both cases in a single opinion "[b]ecause of the overlapping claims and issues." *Id*. at *1. For the same reason, we address both Appellants' appeals in this single order.

In affirming the district court's judgment, we note that a majority of the issues before us are controlled by our recent decisions in *Community Housing Improvement Program v. City of New York*, 59 F.4th 540 (2d Cir.), *cert. denied*, 144 S. Ct. 164 (2023), and *74 Pinehurst LLC v. New York*, 59 F.4th 557 (2d Cir. 2023), *cert. denied*, --- S. Ct. ---, 2024 WL 674658 (2024), which analyzed substantially similar claims against the HSTPA amendments to the RSL. We write primarily for the parties and assume their familiarity with the facts, procedural history, and issues on appeal, which we reference only as necessary to explain our decision to affirm.

\*       \*       \*

6

We review *de novo* a district court's grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). Likewise, we review a district court's grant of a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction *de novo* where, as in this case, the motion was granted "based solely on the complaint and the attached exhibits" and where "the question we address on review is exclusively a question of law." *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 210–11 (2d Cir. 2020).

## I. Physical Taking Claims

### a. *Facial Challenge*

Appellants argue that, facially, the RSL effects a *physical* taking by granting tenants a "collective veto right over conversions"—thereby denying landowners the right to dispose of their property and exit the rental market; and by limiting owner reclamations for personal use. G-Max Appellant Br. at 44. For the reasons outlined below, we disagree.

The Takings Clause of the Fifth Amendment provides that "private

7

property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V; *see also id.* amend. XIV, § 1. When the government effects a physical appropriation of property, a *per se* taking has occurred. *See Cedar Point Nursery v. Hassid*, 594 U.S. 139, 147–49 (2021). A successful facial challenge "must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). "The government effects a physical taking only where it *requires* the landowner to submit to the physical occupation of his land." *Yee v. City of Escondido*, 503 U.S. 519, 527 (1992).

In *Community Housing*, this Court held that "no provision of the RSL effects, facially, a physical occupation of the Landlords' properties." 59 F.4th at 551. Relying on *Yee*, we made clear that "when, as here, 'a landowner decides to rent his land to tenants' the States 'have broad power to regulate housing conditions in general and the landlord-tenant relationship in particular without paying compensation for all economic injuries that such regulation entails.'" *Id*. (quoting *Yee*, 503 U.S. at 528–29); *see also Fed. Home Loan Mortg. Corp. v. New York State Div. of Hous. & Cmty. Renewal*, 83 F.3d 45, 47–48 (2d Cir. 1996) (explaining that "where a property owner offers property for rental housing, the Supreme Court has held

8

that government regulation of the rental relationship does not constitute a physical taking"). Neither the co-op and condo conversion amendments, nor the limitations on owner reclamation of units, "involve unconditional requirements imposed by the legislature," but rather are provisions that must be adhered to "when certain conditions are met." *Community Housing*, 59 F.4th at 552.

Appellants' reliance on *Cedar Point Nursery* and *Horne v. Department of Agriculture*, 576 U.S. 350 (2015), is misplaced because neither case is relevant given neither "concerns a statute that regulates the landlord-tenant relationship." *Community Housing*, 59 F.4th at 553. Instead, *Community Housing* is directly on point and dictates our decision that Appellants have not plausibly alleged a facial physical taking.

b.     *As-Applied Challenge*

Appellants next argue that, as applied to them, the HSTPA amendments to the RSL effect a physical taking. Specifically, with respect to two landlords, they argue that "the HSTPA precluded [them] from changing the use of their property despite their having served a lawful non-renewal notice over a year earlier." G-Max Appellant Br. at 50. *Pinehurst* analyzed as-applied physical takings claims

9

under the RSL and controls our decision to affirm here.

*Pinehurst* held that nothing in the RSL "compel[s] landlords to refrain in perpetuity from terminating a tenancy. Instead, the statute sets forth several bases on which a landlord may terminate a tenant's lease, such as for failing to pay rent, creating a nuisance, violating the lease, or using the property for illegal purposes." *Pinehurst*, 59 F.4th at 563 (internal quotation marks and citation omitted). While Appellants make the conclusory assertion that a taking has been effected because, under the RSL, tenants purportedly can "continue demanding renewal leases in perpetuity" even after being served non-renewal notices, G-Max Appellant Br. at 51, their argument falls for the same reason given in *Pinehurst*: they "have [not] alleged that they have exhausted all the mechanisms contemplated by the RSL that would allow a landlord to evict current tenants." 59 F.4th at 564.

Because Appellants have not demonstrated that they have attempted to use all available methods to either exit the rental market or evict tenants, save serving a non-renewal notice, *Pinehurst* demands that the as-applied physical takings challenge must fail.

10

**II.** **Regulatory Taking Claims**

a. *Facial Challenge*

*Community Housing* also controls our analysis of Appellants' facial regulatory taking claims.[2]  A facial regulatory taking is effected when legislation goes "too far" in restricting the use of property.  *Horne*, 576 U.S. at 360 (quoting *Pa. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922)).  In assessing whether a restriction is in fact a regulatory taking, we employ a flexible "ad hoc, factual inquir[y]," looking to important factors such as (1) "[t]he economic impact of the regulation on the claimant," (2) "the extent to which the regulation has interfered with distinct investment-backed expectations," and (3) "the character of the governmental action."  *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978).

---

[2] BRI also alleges that the district court erred in dismissing their claims that the RSL effects a *per se* categorical taking.  This claim is completely devoid of merit. A *per se* categorical taking occurs when the "property owner . . . suffer[s] a physical 'invasion' of his property" or where "regulation denies all economically beneficial or productive use of land."  *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015 (1992).  The district court correctly found that Appellants "do not allege facts to support that they have been deprived of *all* economical[ly] viable use of their property" and dismissed this claim.  *BRI*, 2021 WL 4198332, at \*21.

In finding that a facial regulatory taking challenge to the RSL failed in *Community Housing*, we looked to the *Penn Central* factors. There, we concluded that the plaintiffs had "not plausibly alleged that every owner of a rent-stabilized property has suffered an adverse economic impact," *Community Housing*, 59 F.4th at 554, that they had "failed to establish that the RSL interferes with *every* property owner's investment-backed expectations," *id.*, and that the character of the government action sought to promote general welfare and public interest through a "comprehensive regulatory regime that governs nearly one million units," *id.* at 555.

Our holding and reasoning in *Community Housing* apply just as strongly here. Appellants have not shown that, for all affected property holders, the economic impacts are universally negative and that investment-backed expectations were subverted. Thus, Appellants' facial regulatory taking claims must fall.

b.      *As-Applied Challenge*

In dismissing Appellants' as-applied regulatory taking claims, the district court concluded that they were "not ripe because the property owners have not

12

tried to take advantage of available hardship exemptions." *BRI*, 2021 WL 4198332, at *25. Similarly, with regard to Appellants' assertions that they have been unable to convert their buildings to condominiums or cooperatives, the district court noted that they had not "tried to obtain the requisite tenant agreements for conversions." *Id*. We agree with the district court.

While it is true that "a claim for a violation of the Takings Clause [becomes ripe] as soon as a government takes [] property for public use without paying for it," *Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2170 (2019), a claim may be unripe where "avenues still remain for the government to clarify or change its decision, including where the plaintiff has an opportunity to seek a variance," *Pinehurst*, 59 F.4th at 565 (internal quotation marks omitted). Here, Appellants have not alleged that they have availed themselves of any opportunities to seek a variance for their properties. Instead, they argue that seeking a variance is unnecessary for their claims to be ripe because "hardship increases are one-offs that do not remedy the underlying restrictions," and "conversions are no longer feasible" with the "51% tenant-approval requirement." G-Max Appellant Br. at 42–43.

These arguments are substantially similar to those we rejected in *Pinehurst*,

13

where we held that "[s]peculation of this sort is insufficient" to circumvent the requirement that parties pursue available administrative relief. 59 F.4th at 565. Appellants' allegations that the remedies available to them are not feasible amount to conclusory speculation. *Pinehurst* confirmed that the district court was correct in finding that, for any as-applied regulatory takings claims to be ripe, Appellants must show they availed themselves of the remedies which were available, and we follow suit.

While we agree that Appellants' as-applied challenges are not ripe, we briefly address the merits of their claims and apply the *Penn Central* factors. While Appellants alleged specific facts in their complaints tending to show a negative economic impact due to the HSPTA, the "mere diminution in the value of property, however serious, is insufficient to demonstrate a taking." *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 645 (1993). Indeed, in *Pinehurst* we confirmed that "[w]e have repeatedly rejected the notion that loss of profit . . . alone could constitute a taking." 59 F.4th at 566 (internal quotation marks omitted). As such, even the HSTPA's "aggregate effect," G-Max Appellant Br. at 33, on Appellants' properties do not show that the

14

economic impact of the regulation weighs in favor of it being deemed a regulatory taking.

We can also look to *Pinehurst* in assessing the investment-backed expectations prong of the *Penn Central* test. Because the RSL has been adjusted and changed many times since it was initially enacted in 1969, we stated in *Pinehurst* that any reasonable investor "would have anticipated their rental properties would be subject to regulations, and that those regulations in the RSL could change yet again." 59 F.4th at 567. Given the history of the RSL, Appellants' claim that that they could never have "expected *this* change" is not plausible. G-Max Appellant Br. at 36. This factor weighs against Appellants' as-applied regulatory takings claim.

The character of the governmental action at issue also weighs strongly against Appellants' claims. As we discussed in *Community Housing*, the RSL is concerned with "broad public interests" and "the legislature has determined that [it] is necessary to prevent 'serious threats to the public health, safety and general welfare.'" 59 F.4th at 555 (quoting N.Y.C. Admin. Code § 26-501). Upon balancing the *Penn Central* factors, both *Community Housing* and *Pinehurst* demand

15

that, even if Appellants' claims were ripe, their as-applied regulatory taking claims fail on the merits.

## III.     Contract Clause Claim

BRI additionally argues that the HSTPA amendment to the RSL violates the Constitution's Contract Clause because it "interferes with existing contracts and it does not advance its alleged purposes."   BRI Appellant Br. at 13.   We disagree.

The Constitution provides that: "No State shall . . . pass any . . . Law impairing the Obligation of Contracts."   U.S. Const., art. I, § 10, cl. 1.   To state a claim for a violation of the Contract Clause, a plaintiff must show that a state law has "operated as a substantial impairment of a contractual relationship."   *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992) (quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 (1978)).   Significantly, though, a law "is out of [the clause's] true meaning, if the law is made to operate on future contracts only."   *Ogden v. Saunders*, 25 U.S. 213, 327 (1827).

In dismissing Appellants' claims, the district court reasoned that their claims were based on "future, rather than existing, contracts."   *BRI*, 2021 WL 4198332, at *32.   On appeal, BRI contends that this reasoning was faulty in that it

16

did not reflect the fact that landlords are now required to renew leases at permanent preferential rates, which means that the law was affecting an existing, not future, contractual relationship. It is true that under New York state law, "[w]here the original lease includes an option to renew, the exercise of it by the tenant does not create a new lease; rather it is a prolongation of the original agreement." *Dime Sav. Bank of N.Y., FSB v. Montague St. Realty Assocs.*, 90 N.Y.2d 539, 543 (1997). However, where the original lease does not include a renewal option, a "lease extension [is] a new agreement rather than a continuation of the old agreement." *Id.* BRI has provided no facts for a court to infer that it held existing contracts affected by the HSTPA, i.e., whether it (1) held a pre-2019 lease (2) with a renewal option that was (3) renewed after 2019 and affected by the HSTPA.

In its complaint, BRI simply contends that one of the Plaintiffs "has been forced to offer renewal leases." BRI App'x at 27. While it is theoretically possible that those leases, upon which Appellants do not elaborate in the complaint, had renewal clauses in them from the start—and thus could potentially implicate the Contract Clause—we cannot find that BRI has stated a claim based

17

on an assumption from an already conclusory statement when "a complaint [does not] suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (second alteration in original) (internal quotation marks omitted). The district court correctly dismissed Appellants' Contract Clause claims.

## IV. Due Process Claims

The district court also dismissed Appellants' claims that the RSL violated the Due Process Clause of the Fourteenth Amendment, concluding that Appellants were impermissibly dressing their Takings Clause claim up as a substantive due process claim, and that, even if considered on the merits, the RSL would withstand rational basis review. We agree with the district court.

While Appellants state that the taking is not "the source of the due process violation," G-Max Appellant. Br. at 53, their due process claims are that the "landlord owners . . . [are] deprived of their property without due process." G-Max App'x at 91; *see also* BRI App'x at 42 (claiming that "Plaintiffs are being deprived of their property rights"). Appellants allege no factual differences in their due process and Takings Clause claims, and, as we held in *Community*

18

*Housing*, "the Due Process Clause cannot 'do the work of the Takings Clause' because 'where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Community Housing*, 59 F.4th at 556 (quoting *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.*, 560 U.S. 702, 720–21 (2010)).

Regardless, even if Appellants could bring a due process claim, it would fail on the merits. Appellants allege that the regulations do not achieve the purposes for which they were passed: "to preserve affordable housing in New York." G-Max App'x at 26. Appellants' complaints argue that, paradoxically, the regulations will, in the long term, increase the unaffordability of housing in New York. *See, e.g.*, BRI App'x at 53–54 (citing to economists' studies questioning the efficacy of rent-stabilization efforts). However, for the regulation to succeed under rational basis review, it must simply be "rationally related to legitimate government interests." *Washington v. Glucksberg*, 521 U.S. 702, 728 (1997). The legislature enacted the challenged regulations for the purpose of "permit[ting]

19

low- and moderate-income people to reside in New York City" and "[i]t is beyond dispute that neighborhood continuity and stability are valid bases for enacting a law." *Community Housing*, 59 F.4th at 557. Appellants' assertions amount to policy and efficacy disagreements with the legislature, and "rational basis review is not a mechanism for judges to second guess legislative judgment even when, as here, they may conflict in part with the opinions of some experts." *Id.* Accordingly, Appellants' due process challenges fail on their merits as well.

## V. Sovereign Immunity

Lastly, Appellants challenge the district court finding that it lacked jurisdiction to hear the Takings Clause claim against the State of New York because the State is protected by Eleventh Amendment state sovereign immunity. For the reasons below, we agree with the district court.

Except where Congress has abrogated a state's immunity, or where a state has waived its immunity, the Eleventh Amendment "render[s] states and their agencies immune from suits brought by private parties in federal court." *In re Charter Oak Assocs.*, 361 F.3d 760, 765 (2d Cir. 2004). Appellants argue that it was an error for the "district court [to hold that] sovereign immunity bars [their]

20

federal takings claim against the State of New York."   G-Max Appellant Br. at 58.

Notably, the district court's determination is aligned with our conclusion in *Pinehurst*, and we are thus controlled by that decision.   There, we held that "sovereign immunity trumps the Takings Clause where, as here, the state provides its own remedy for an alleged violation."   *Pinehurst*, 59 F.4th at 570.   Therefore, we must reject Appellants' arguments that the State of New York is not protected by sovereign immunity against a Takings Clause claim.

*                         *                         *

We have considered Appellants' remaining arguments and find them to be without merit.   For the reasons set forth above, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

21