
**Filed**
Supreme Court of Guam, Clerk of Court

# IN THE SUPREME COURT OF GUAM

## HEE K. CHO and MIN S. CHO,
Plaintiffs-Appellants,

**v.**

## ALUPANG BEACH CLUB, INC. and STEVEN KASPERBAUER,
Defendants-Appellees.

Supreme Court Case No. CVA24-003
Superior Court Case No. CV1059-17

## OPINION

## Cite as: 2025 Guam 3

Appeal from the Superior Court of Guam
Argued and submitted on August 23, 2024
Hagåtña, Guam

Appearing for Plaintiffs-Appellants:
Daniel J. Berman, *Esq.*
Berman Law Firm
Bank of Guam Bldg.
111 Chalan Santo Papa, Ste. 503
Hagåtña, GU 96910

Appearing for Defendants-Appellees:
R. Todd Thompson, *Esq.*
Thompson Thompson & Alcantara, P.C.
238 Archbishop Flores St., Ste. 801
Hagåtña, GU 96910

**E-Received**
9/4/2025 3:55:03 PM


BEFORE: ROBERT J. TORRES, Chief Justice; F. PHILIP CARBULLIDO, Associate Justice; KATHERINE A. MARAMAN, Associate Justice.

**CARBULLIDO, J.:**

[1]      Plaintiffs-Appellants Hee K. Cho and Min S. Cho (collectively, the "Chos") appeal the trial court's decision granting Defendants-Appellees Alupang Beach Club, Inc. and Steven Kasperbauer's (collectively, "ABC") second motion for summary judgment. They also appeal the denial of their motion to reconsider that decision. The Chos argue that the trial court did not address all of their claims when it purported to dispose of the case on summary judgment. The Chos also argue that the trial court erred when it denied their motion for reconsideration after finding that the Chos abandoned their claims by failing to assert them in opposition to ABC's second motion for summary judgment.

[2]      This dispute centers on the interpretation of a 2004 Settlement Agreement and Mutual Release (the "Settlement Agreement" or "SAMR"), which intended to resolve various claims about the Alupang Beach Tower (the "Tower" or "ABT"). The Chos own a controlling interest in the Tower, while ABC leases one of its three commercial units. Under the Settlement Agreement, ABC agreed not to challenge certain business decisions related to the Tower's governance and operations, including a 2004 Replacement Declaration of Horizontal Property Regime (the "Replacement HPR"), which was required to bring the property into compliance with Guam law.

[3]      In 2016, ABC formally objected to a proposed First Amendment to the Replacement HPR (the "Proposed Amendment") that the Chos submitted to the Guam Land Use Commission (the "Land Use Commission" or "GLUC"). In response, the Chos sued ABC in the Superior Court for breach of contract, seeking injunctive relief or, in the alternative, seeking economic damages for breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment.

The trial court granted summary judgment for ABC, finding the Chos lacked standing to pursue their claims. The court later denied the Chos' motion for reconsideration. These decisions misapplied the traditional standing doctrine and did not address the substantive issues raised by the parties in their motions for summary judgment. We reverse.

## I. FACTUAL AND PROCEDURAL HISTORY

[4]     In 2003, the Chos contracted to buy a majority of the units at the Tower from Hibari Guam Corporation ("Hibari" or "Hibari Guam"). As part of the sale, Hibari agreed to file a Replacement HPR with the Land Use Commission to bring the Tower into compliance with the Guam Horizontal Property Regime Act. ABC objected to the bulk transfer of Hibari's interest in the Tower to the Chos as well as certain actions Hibari took in connection with the proposed Replacement HPR before the Land Use Commission approved it. *Alupang Beach Club, Inc., v. Hibari Guam Corp.*, CV1983-03 (First Am. Compl. at 11 (May 26, 2004)).[1] ABC submitted a letter of objection to the Land Use Commission regarding the Replacement HPR and sued Hibari and the Chos, among others, asserting various claims related to the Tower. The parties—including ABC, Hibari, and the Chos—ultimately settled, formalized in the 2004 Settlement Agreement. Under the Settlement Agreement, ABC withdrew its objections to the Replacement HPR, which the Land Use Commission subsequently approved.

[5]     In exchange for the release of ABC's claims and as contemplated in the 2003 Purchase and Sale Agreement between Hibari and Hee K. Cho (the "Purchase Agreement"), Hibari paid ABC a settlement amount of $475,000, excluding attorney's fees. Record on Appeal ("RA"), tab 1

---

[1] "Although outside the record of this appeal, we can properly take judicial notice" of documents filed in ABC's earlier lawsuit against Hibari. *See People v. Tedtaotao*, 2023 Guam 21 ¶ 2 n.1 (citing *People v. Chung*, 2004 Guam 2 ¶ 14). "In our discretion, and without request, we take judicial notice of this and certain other court records under Guam Rule of Evidence 201(b)(2)-(c), as they are 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Id.* (citation omitted). We take judicial notice of documents filed in ABC's lawsuit "not for the truth of the matters asserted," but to establish "the fact of their existence." *See id.* ¶ 4 n.2 (citations omitted).

(Compl., Oct. 9, 2017), Ex. 1 at 5 ¶ 2.1 (Settlement Agreement, Oct. 1, 2004)); *see also* RA, tab 75 (Hee K. Cho's 2nd Decl., Apr. 12, 2022), Ex. A at 8 ¶ 4.11(c) (Purchase Agreement, Oct. 8, 2003) ("Alupang Beach Club has alleged that Seller was negligent . . . . The Seller assumes all liability in connection with these claims."). Besides withdrawing all objections to the Replacement HPR, ABC agreed to "sign a new Replacement HPR or amendment to the HPR [if requested by Hibari or the Chos], so long as such document is similar in material respects to the Replacement HPR previously submitted to the GLUC." RA, tab 1 (Compl.), Ex. 1 at 6 ¶ 3.1 (Settlement Agreement); *see also id.* at 12 ¶ 5.4 ("To the extent any further action is necessary to give full legal force and effect to the Replacement HPR . . . ABC warrants and agrees not to oppose or contest such action . . . ."). ABC agreed (1) to "not object to or assert any claims relating to the type of business operations" at the Tower, *id.* at 8 ¶ 3.10, (2) to not oppose any application for conditional use permits, zoning variances, or regulatory permits, *id.* at 7 ¶ 3.8, (3) to acknowledge that the Tower is a mixed-use condominium, including commercial, residential, and hotel spaces, *id.* at 8 ¶ 3.12, and (4) to recognize that market or economic conditions might require modifications to the Tower facilities, *see id.* The Settlement Agreement also states that "[i]n the event that ABC breaches the terms of paragraphs 3.1, 3.2, 3.3, 3.6, 3.7, 3.8, 3.10, 3.11 or 3.12, then Hibari Guam shall have the right to a refund for any amounts paid under this Settlement [Agreement]." *Id.* at 7 ¶ 3.9.

[6]     In 2016, the Chos, on behalf of the Tower Owners Association, submitted the Proposed Amendment to the Land Use Commission, seeking to change the ratio of hotel to residential units at the Tower. In response, ABC filed several written objections to the Proposed Amendment with the Land Use Commission. "Because of ABC's failure to abide by its obligations, and honor their promises made in the SAMR," the Chos claimed they "received nothing in exchange" for the

settlement paid to ABC under the Settlement Agreement and sent a written demand to ABC to return all funds paid. RA, tab 1 (Compl.), Ex. 5 at 1, 3 (Demand Letter, May 9, 2017). When ABC did not return the settlement payment, the Chos sued ABC for breach of contract, breach of the implied warranty of good faith and fair dealing, and unjust enrichment, seeking injunctive relief or economic damages.

[7]       In response, ABC filed an anti-SLAPP[2] motion seeking dismissal of the Chos' claims. ABC argued that the Chos' claims arose from ABC's constitutionally protected petitioning activities, which were immunized under 7 GCA § 17104. The trial court denied ABC's anti-SLAPP motion, ruling that ABC had waived its right to petition in the Settlement Agreement. RA, tab 40 at 6-10 (Dec. & Order, Aug. 2, 2018) ("The existence of the SAMR and the terms of the SAMR are undisputed by the parties."). The trial court cited paragraph 3.1 of the Settlement Agreement, in which ABC agreed to "without delay sign a new Replacement HPR or amendments to the HPR so long as such document is *similar in material respects* to the Replacement HPR." *Id.* at 6-7 (quoting RA, tab 1 (Compl.), Ex. 1 at 6 ¶ 3.1 (Settlement Agreement)). The trial court concluded that paragraph 3.1 applied to the Proposed Amendment because it was not "materially different" from the Replacement HPR. *Id.* at 7 (citing RA, tab 1 (Compl.), Ex. 1 at 6 ¶ 3.1 (Settlement Agreement)). ABC appealed the denial of their motion in the case captioned *Cho v. Alupang Beach Club, Inc.*, 2020 Guam 10 ("*Alupang I*").

[8]       Generally, for a lawsuit to survive an anti-SLAPP motion under the CPGA, it must be based on more than the defendant's constitutionally protected petitioning rights; there must be a valid legal claim independent of the petitioning activity providing a legitimate foundation for the

---

[2] "SLAPP" is an acronym that stands for "Strategic Lawsuits Against Public Participation." *Guam Greyhound, Inc. v. Brizill*, 2008 Guam 13 ¶ 9. The Citizen Participation in Government Act ("CPGA") is Guam's anti-SLAPP statute. *Id.* ¶¶ 1, 9.

lawsuit. *See Alupang I*, 2020 Guam 10 ¶¶ 7-8, 10-13. In *Alupang I*, this court held that the Settlement Agreement provided a "substantial basis" for the Chos' claims, independent of ABC's petitioning activity, thereby precluding ABC from claiming immunity under the CPGA. *Id.* ¶¶ 17, 19. While *Alupang I* affirmed the trial court's denial of ABC's motion for summary judgment, it did so for alternative reasons, concluding that it was premature for this court to assess the trial court's materiality analysis due to unresolved questions concerning the scope and applicability of the Settlement Agreement. *Id.* ¶¶ 13, 17-19. This court held:

> Because the scope and applicability of the Settlement Agreement to the [Proposed Amendment] are unclear, the parties should have an opportunity to flesh out those issues on the merits. Were the Settlement Agreement's scope and applicability to the [Proposed Amendment] not subject to interpretation, we would find that CPGA immunity applies.

*Id.* ¶ 17.

[9]    In *Alupang I*, this court also observed that several provisions of the Settlement Agreement could "cover future replacement or amended HPRs" and may, therefore, be "relevant to the Chos' claims." *Id.* ¶ 16. This court identified these provisions when it indicated that the Chos seek an injunction to prevent ABC from breaching the Settlement Agreement by: (1) opposing any regulatory action considered necessary by the Tower Owners Association for the Tower's construction, maintenance, and operation (paragraph 3.8), (2) challenging the Chos' business operations (paragraph 3.10), (3) interfering with arrangements between the Tower Owners Association and the Chos regarding the use of the main lobby and common areas (paragraph 3.12), and (4) claiming any part of the Settlement Agreement is invalid (paragraph 5.4). *Id.* ¶¶ 15-16; *see also* RA, tab 1 (Compl.), Ex. 1 at 7-8, 11-12 (Settlement Agreement). This court further determined that the Chos' intention might be to enforce the Settlement Agreement, not simply restrain ABC from opposing the Proposed Amendment before the Land Use Commission.

*Alupang I*, 2020 Guam 10 ¶ 15. The alleged breach of contract was left unresolved and remanded for further proceedings. *Id.* ¶ 19 ("The alleged breach of contract is an issue to be fully resolved on remand.").

[10]     On remand, ABC filed a second motion for summary judgment in 2022. First, ABC argued that the Chos lack standing to seek restitution of the settlement payment, maintaining that only Hibari has the right to recover it. Next, ABC claimed it did not waive its fundamental right to protest the Proposed Amendment, arguing that the Settlement Agreement purporting to waive such right "are not sufficiently clear and compelling" to pass the strict scrutiny standard required for waiving a fundamental constitutional right. RA, tab 72 at 6-10 (Mem. P. & A. Supp. ABC's 2nd Mot. Summ. J., Mar. 15, 2022). Finally, ABC contended that the Settlement Agreement is "narrowly tailored" and does not apply to the Proposed Amendment, specifically challenging the applicability of paragraphs 3.1, 3.8, 3.10, and 3.12. *Id.* at 12-19.

[11]     In opposition, the Chos argued that they are the sole successors to Hibari's right of refund under the Settlement Agreement, based on the Purchase Agreement. RA, tab 74 at 9-10 (Chos' Opp'n to ABC's 2nd Mot. Summ. J., Apr. 12, 2022) (citing RA, tab 75 at 1-2 (Hee K. Cho's 2nd Decl.)); *id.* at 9 ("The Cho Group is the sole successor to the Hibari Guam right of refund." (quoting RA, tab 32 at 4 (Hee K. Cho's 1st Decl., Mar. 8, 2018))). The Chos also argued that ABC was barred from seeking reconsideration of the trial court's prior interpretation of the Settlement Agreement under the law-of-the-case doctrine, which prohibits revisiting an issue that has been decided in the same case. *Id.* at 10-12 ("Defendants improperly seek reconsideration of a settled issue without a motion to reconsider."). They contended that ABC had expressly waived its right to protest the Proposed Amendment and that material issues of fact remained regarding whether

ABC had violated the express terms of the Settlement Agreement, thus precluding summary judgment.

[12]    The trial court granted ABC's second motion for summary judgment, noting that the Chos' sole evidence supporting their claim as successors to Hibari's right of refund was Hee K. Cho's declarations, which lacked citations to specific provisions of the Purchase Agreement for support. RA, tab 83 at 4-5 (Dec. & Order, May 16, 2023) (finding that the Chos' "attempt to use their own Declarations as probative evidence" was not "particularly convincing").  Citing the Purchase Agreement, the trial court determined that "the explicit assumption of liability by Hibari," under section 4.11(c), "combined with the subsequent payment of $475,000 from Hibari to ABC to settle these claims, denotes that the right of refund for said payment attached to Hibari *after* the Sale and Purchase Agreement was executed." *Id.* at 5 (emphasis added).  Based on these findings, the trial court held that:

> Even if Plaintiffs allegedly succeeded Hibari's rights pursuant to the Sale and Purchase Agreement, the right to refund was not one of them because (1) it did not exist at the time, and (2) the right of refund is tied to the obligation of payment and Hibari's liability to ABC, both of which were excepted from the Purchase and Sale Agreement.

*Id.*  The trial court addressed none of the other issues raised by the parties in that decision. Judgment was entered in favor of ABC, dismissing the case with prejudice.

[13]    The Chos then moved to amend or vacate its judgment under Guam Rule of Civil Procedure ("GRCP") 59, arguing that the trial court's grant of summary judgment did not address other claims alleged in their complaint, including injunctive relief.  The trial court denied that motion, reasoning that the Chos had abandoned their claim for injunctive relief by failing to specifically argue for it alongside their claim to recover the payment made by Hibari under paragraph 3.9 of the Settlement Agreement.  RA, tab 111 at 6 (Dec. & Order, Jan. 23, 2024) ("There being no argument expressly

in support of injunctive relief within the Second MSJ Opposition, Plaintiffs' injunctive claim would effectively be abandoned and only the claim for monetary damages would survive."). The Chos timely appealed.

## II. JURISDICTION

[14] This court has jurisdiction over an appeal from a final judgment. 48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 119-34 (2025)); 7 GCA §§ 3107, 3108(a) (2005).

## III. STANDARD OF REVIEW

[15] "We review a trial court's decision granting a motion for summary judgment *de novo*." *In re Est. of Leon Guerrero*, 2023 Guam 10 ¶ 17 (quoting *Ngirangesil v. Kim*, 2021 Guam 28 ¶ 8). "Similarly, we review *de novo* a trial court's decision on whether a party has standing." *Hemlani v. Melwani*, 2021 Guam 26 ¶ 18. "The denial of a motion for reconsideration is reviewed for an abuse of discretion." *Att'y Gen. of Guam v. Gutierrez*, 2011 Guam 10 ¶ 18; *DFS Guam L.P. v. A.B. Won Pat Int'l Airport Auth.*, 2014 Guam 12 ¶ 10. Reconsideration is appropriate "where the trial court . . . committed clear error or the decision was manifestly unjust." *DFS Guam*, 2014 Guam 12 ¶ 21 (quoting *Rong Chang Co. v. M2P, Inc.*, 2012 Guam 1 ¶ 16).

## IV. ANALYSIS

### A. The Chos Have Traditional Standing to Bring Claims for Breach of the Settlement Agreement

[16] The threshold issue in this appeal is whether the Chos have standing to bring claims against ABC for breach of the Settlement Agreement. The trial court concluded that the Chos lacked standing for their refund claim, reasoning that paragraph 3.9 of the Settlement Agreement limits the right to recover the payment specified in section 2.0 to Hibari, thus preventing the Chos from satisfying the injury-in-fact requirement for traditional standing. *See* RA, tab 83 at 3-5 (Dec. & Order) ("Because Plaintiffs are owed no money pursuant to any right of refund, the Court thus

finds that there is no injury in fact, and therefore Plaintiffs have no standing."). The trial court's legal conclusions are flawed, and its analysis is insufficient to resolve this case.

### 1. The trial court's finding that the Chos "are owed no money pursuant to any right of refund" was a determination on the merits and did not require a traditional standing analysis

[17]   Both ABC and the trial court conflate the concept of "traditional standing"[3] with "contractual standing." Traditional standing concerns whether a court has the power to hear a case, while contractual standing concerns whether a party has a valid claim for relief. *See, e.g.*, *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 211 (2d Cir. 2020) ("Contractual standing is distinct from Article III standing and does not implicate subject-matter jurisdiction. Article III standing speaks to the power of a court to adjudicate a controversy; contractual standing speaks to a party's right to relief for breach of contract."); *Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.*, 11 F.4th 345, 350 (5th Cir. 2021) (per curiam) (holding contractual standing pertains to the claim's merits, not the court's subject matter jurisdiction); *Avery v. Comm'r, N.H. Dep't of Corr.*, 248 A.3d 1179, 1189 (N.H. 2020); *John C. Flood of DC, Inc. v. SuperMedia, L.L.C.*, 408 S.W.3d 645, 651 (Tex. App. 2013) ("While the question of whether a party is entitled to sue on a contract is often informally referred to as a question of 'standing,' it is not truly a standing issue because it does not affect the jurisdiction of the court; it is, instead, a decision on the merits." (citation omitted)). To have traditional standing in our jurisdiction, a party must demonstrate: (1) an "injury in fact" that is concrete, particularized, and actual or imminent; (2) a causal connection between the injury and the defendant's challenged action; and (3) that it is likely—not merely speculative—that a

---

[3] "Though this court is not an Article III court constitutionally bound to require parties to establish standing, we nevertheless have adopted 'traditional standing requirements' based on Article III princip[le]s and 'deriv[ed] guidance' from both state and federal courts." *In re Req. of Leon Guerrero*, 2023 Guam 11 ¶ 18 (second alteration in original) (quoting *Guam Mem'l Hosp. Auth. v. Superior Court (Comm. on Health & Hum. Servs.)*, 2012 Guam 17 ¶ 9).

favorable decision will redress the injury. *Linsangan v. Gov't of Guam*, 2020 Guam 27 ¶ 15 (per curiam) (citations omitted).

[18]     The trial court erred in treating the Chos' alleged lack of contractual right to repayment under paragraph 3.9 of the Settlement Agreement as a traditional standing issue. *See* RA, tab 111 at 8 (Dec. & Order); RA, tab 83 at 3-5 (Dec. & Order) (quoting RA, tab 1 (Compl.), Ex. 1 at 7 ¶ 3.9 (Settlement Agreement)). This determination concerned the merits of their claim and should not have been discussed under the framework of traditional standing. By analyzing its subject matter jurisdiction through the lens of recoverable damages, the trial court improperly evaluated "a party's right to relief for breach of contract" rather than the court's power "to adjudicate a controversy." *See SM Kids*, 963 F.3d at 211.

[19]     In granting ABC's second motion for summary judgment, the trial court focused exclusively on the Chos' claim for monetary relief for breach of contract. However, the Chos' claims were not limited to monetary relief; they also sought injunctive relief and other contractual remedies. *See* RA, tab 1 at 3-7 (Compl.). By narrowly addressing the alleged lack of traditional standing for monetary damages, the trial court overlooked the other causes of action raised by the Chos, including claims for injunctive relief, breach of the covenant of good faith and fair dealing, and unjust enrichment. *See id.*

[20]     In denying the Chos' motion to amend or vacate the judgment, the trial court compounded its error by reasoning that the Chos had abandoned their injunctive relief claim due to their failure to argue "standing" for such relief. RA, tab 111 at 4-6 (Dec. & Order) ("There is no mention of standing for injunctive relief, or how said relief would remedy the alleged harm, merely an argument that [the Chos] have standing for monetary relief.").

**2.  The Chos have traditional standing based on their status as a party to the Settlement Agreement and allegations of a breach by ABC**

[21]     Settlement agreements are contracts and are governed by principles of contract law.  *See, e.g., Sharrock v. McCoy*, 2016 Guam 7 ¶ 95 ("This court applies contract principles to the interpretation of settlement agreements." (quoting *Blas v. Cruz*, 2009 Guam 12 ¶ 11)).  A breach of contract claim requires a cognizable interest in the contract and an alleged injury from the other party's failure to perform.  *See, e.g., Katz v. Pershing, LLC*, 672 F.3d 64, 73 (1st Cir. 2012).  "When a party is a signatory to a contractual agreement, a breach of contract is an injury sufficient to confer [traditional] standing."  *E.g., Trapp v. Roden*, 41 N.E.3d 1, 9 (Mass. 2015) (citing *Katz*, 672 F.3d at 72); *Katz*, 672 F.3d at 73 (explaining that, to assert "a breach of contract claim . . . , the plaintiff must plead the existence of a promise that [the plaintiff] is entitled to enforce" (citing *Truty v. Fed. Bakers Supply Corp.*, 629 N.Y.S.2d 898, 899 (App. Div. 1995))).  Thus, a party to a contract has traditional standing to seek relief for its breach, whether monetary or injunctive.  *See Trapp*, 41 N.E.3d at 9; *Cottman Transmission Sys., Inc. v. Hocap Corp.*, 803 A.2d 402, 407 (Conn. App. Ct. 2002) ("It is axiomatic that 'an action upon a contract or for breach of a contract can be brought and maintained by one who is a party to the contract sued upon . . . .'" (omission in original) (quoting 59 Am. Jur. 2d, *Parties* § 28 (1987)) (citing *Baxter v. Camp*, 41 A. 803 (Conn. 1898))); *Avery*, 248 A.3d at 1189; *Katz*, 672 F.3d at 73.

[22]     The Chos and ABC are parties to the Settlement Agreement, and the Chos allege ABC breached its obligations under the agreement.  RA, tab 1 at 3-6 (Compl.).  This contractual relationship and the alleged breach establish a sufficient injury-in-fact to confer traditional standing.  This court's preliminary finding in *Alupang I*—that "[t]he Chos seek relief, both injunctive and monetary, for ABC's alleged breach of the Settlement Agreement"—confirms the traditional standing requirements are satisfied in the context of the Chos' breach of contract claims.

*See* 2020 Guam 10 ¶ 13. In the prior appeal, this court held that the Settlement Agreement provided a "substantial basis" for the Chos' claims, independent of ABC's petitioning activity. *Id.* ¶¶ 13, 17, 19 ("[I]t is sufficient that a contract arguably covering the claims exists to provide a substantial basis other than . . . the petitioning activity."). It would be contradictory to conclude that the Chos had a substantial basis to assert claims under the contract but lacked traditional standing to pursue relief for its breach.

[23]     The trial court's Decision and Order granting summary judgment was based on a flawed standing analysis. Further compounding this error, the trial court did not address the merits of the Chos' breach of contract claim, including their entitlement to enforce the Settlement Agreement. This error persisted throughout the trial court's analysis and resulted in an improper dismissal of the Chos' claims without adequately examining their legal rights under the contract.

[24]     Under this court's instructions in *Alupang I*, the trial court on remand should have determined: (1) whether the Proposed Amendment is materially similar to the Replacement HPR under paragraph 3.1 of the Settlement Agreement, and (2) if so, or if any other provisions limiting ABC's conduct apply, whether the Chos have any right to relief under the Settlement Agreement. *See id.* ¶¶ 18-20.

[25]     The trial court committed an error of law in granting summary judgment on standing grounds. Accordingly, we vacate the grant of summary judgment and instruct the trial court to review the Settlement Agreement and then resolve the specific issues raised by the parties in their summary judgment briefs on the merits under the requirements in GRCP 56.

## B. The Chos Did Not Abandon Their Claims in Their Opposition to the Motion for Summary Judgment

[26]     In addition to the trial court's erroneous standing analysis, its conclusion on summary judgment and reconsideration that the Chos had abandoned their other claims was also in error.

The trial court explained that, while its summary judgment decision primarily focused on the Chos' standing to seek monetary damages, it found that the Chos had abandoned their other claims for injunctive relief due to their failure to raise these issues in opposition to ABC's second motion for summary judgment. RA, tab 111 at 4-6 (Dec. & Order). This was a clear mistake of law, as the trial court overlooked multiple instances where the Chos directly addressed this issue, particularly with their interpretation of specific contract terms.

[27]    Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Waathdad v. Cyfred, Ltd.*, 2021 Guam 24 ¶ 16 (quoting Guam R. Civ. P. 56(c)) (citing *Camacho v. Perez*, 2017 Guam 16 ¶ 12). "A genuine issue of material fact exists when there is sufficient evidence to establish a factual dispute that must be resolved by a fact-finder." *Camacho*, 2017 Guam 16 ¶ 12 (citing *Iizuka Corp. v. Kawasho Int'l (Guam), Inc.*, 1997 Guam 10 ¶ 7). A fact is material if (1) it relates to an element of a claim or defense, and (2) its existence could affect the outcome of the case. *Edwards v. Pac. Fin. Corp.*, 2000 Guam 27 ¶ 7 (citing *Iizuka Corp.*, 1997 Guam 10 ¶ 7). In making its decision, the "court must view the evidence and draw inferences in a light most favorable to the non-movant." *Camacho*, 2017 Guam 16 ¶ 13 (quoting *Gov't of Guam v. Gutierrez ex rel. Est. of Torres*, 2015 Guam 8 ¶ 26).

[28]    The party moving for summary judgment "bears the initial burden to show that undisputed facts in the record support a *prima facie* entitlement to the relief requested." *Est. of Cruz v. Detry Corp.*, 2023 Guam 14 ¶ 24 (quoting *DFS Guam L.P. v. A.B. Won Pat Int'l Airport Auth.*, 2020 Guam 20 ¶ 35). "If the movant satisfies this burden, the burden then shifts to the [non-movant] to show that there exists a material question of fact that would preclude the grant of summary

judgment." *Id.* (alteration in original) (quoting *DFS Guam*, 2020 Guam 20 ¶ 35). When a defendant moves for summary judgment on the claims of a plaintiff, it satisfies its burden by either (1) presenting evidence that negates an essential element of the plaintiff's claim or (2) demonstrating that the plaintiff's evidence is insufficient to establish an essential element of the claim. *See* 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727.1 (4th ed. 2025); *Kim v. Hong*, 1997 Guam 11 ¶ 6, 14 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)) (finding that triable issues of fact existed based on deposition testimony and signed affidavits from the non-movant). Although this burden is low, it still exists.

[29]     If the movant discharges its initial burden, the burden shifts to the non-movant to produce evidence demonstrating the existence of a genuine issue of material fact. *See Edwards*, 2000 Guam 27 ¶ 7 (citing *Iizuka Corp.*, 1997 Guam 10 ¶ 8). "[T]he non-movant cannot merely rely on allegations contained in the complaint" to oppose the motion, "but must produce at least some significant probative evidence tending to support the complaint." *Id.* (citing *Iizuka Corp.*, 1997 Guam 10 ¶ 8). "If the non-movant 'fails to make a showing sufficient to establish the existence of an essential element to that party's case on which that party will bear the burden of proof at trial,' then the movant is entitled to a judgment as a matter of law." *Camacho*, 2017 Guam 16 ¶ 13 (quoting *Alvarez v. Atalig*, Civ. No. 89-00010A, 1990 WL 320760, at *2 (D. Guam App. Div. Jan 26, 1990)); *see also* Guam R. Civ. P. 56. "Thus, the 'court's ultimate inquiry is to determine whether the "specific fact" set forth by the nonmoving party, coupled with the undisputed background or contextual facts, are such that a rational and reasonable jury might return a verdict in its favor based on that evidence.'" *Camacho*, 2017 Guam 16 ¶ 14 (quoting *Iizuka Corp.*, 1997 Guam 10 ¶ 8).

### 1.   A plaintiff does not need to address claims not raised in the defendant's summary judgment motion

[30]   For the first time on appeal, ABC argues that to meet its burden on summary judgment, it was not required to "exhaustively address and negate all of the non-movant's claims, including abandoned ones." Appellee's Br. at 14 (June 14, 2024). We reject this circular argument.

[31]   Citing the Ninth Circuit in *Shakur v. Schriro*, ABC asserts that the Chos' failure to raise a claim in their opposition to ABC's second summary judgment motion "amounted to a waiver of the claim, *even where* [ABC's] *motion 'lacked any reference to the issue.'*" *Id.* (quoting *Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008)) (citing *Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (per curiam)). ABC contends that the Chos had to anticipate and refute arguments that ABC did not raise in its summary judgment motion, or risk abandoning their claims.[4] The Chos counter that requiring the non-movant to address arguments not raised by the moving party would unjustly expand the non-movant's burden in summary judgment proceedings. *See* Appellant's Reply Br. at 5-6 (July 1, 2024) ("[S]ince the burden on the party opposing summary judgment would be to respond to all possible arguments whether made or not by the moving party, defending counsel in an abundance of caution would need to identify all conceivable arguments, and then explain why each one is frivolous or inapplicable."). We agree. The trial court's fundamental misapplication of the burden of proof in summary judgment motions—

---

[4] ABC first raised its abandonment argument in its opposition to the Chos' GRCP 59 motion. RA, tab 101 at 1, 7-8 (ABC's Opp'n to Chos' Mot., Inter Alia, to Alter or Amend J., July 11, 2023). In that brief, ABC did not claim that a non-movant waives claims by failing to address them in opposition, even if the summary judgment motion "lacked any reference to the issue." *Compare id.*, *with* Appellee's Br. at 14 (June 14, 2024) (quoting *Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008)). Instead, ABC argued that "Plaintiffs certainly offered no *analysis* of their injunction claim. More importantly, Plaintiffs never produced a shred of *evidence* to suggest that such an injunction claim was even viable, let alone that it somehow posed a bar to summary judgment. Plaintiffs legally abandoned their claim." RA, tab 101 at 8 (ABC's Opp'n to Chos' Mot., Inter Alia, to Alter or Amend J.). The trial court seemed to adopt this theory, without mentioning the more stringent requirement that ABC now asserts on appeal for a plaintiff to meet. *See* RA, tab 111 at 4-8 (Dec. & Order, Jan. 23, 2024).

particularly when the movant, such as a defendant seeking summary judgment on a plaintiff's claims, does not bear the burden of proof—bears further discussion.

[32]     When ABC moved for summary judgment in March 2022, Guam Rule of Civil Procedure 56 was based on the Federal Rule of Civil Procedure ("FRCP") 56, as amended in 1963.  GRCP 56, source note; *see also* Edward Brunet, John Parry & Martin Redish, *Summary Judgment: Federal Law and Practice* app. B (2024).[5]  No substantive changes were made to FRCP 56 until 2007, when a substantial overhaul of the rule occurred.  Brunet, Parry & Redish, *supra*, app. B. Therefore, cases interpreting and applying FRCP 56 between 1963 and 2007 are persuasive and help guide our understanding of Guam's parallel Rule 56, which was in effect until its amendment in July 2022 to mirror the amendments to the federal rule.

[33]     In *Celotex Corp. v. Catrett*, the United States Supreme Court recognized that a party seeking summary judgment must inform the court of its motion's basis and cite relevant documents showing "the absence of a genuine issue of material fact."  477 U.S. at 323.  However, the Court held that FRCP 56 does not expressly or implicitly require the movant to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.*  The Court concluded that

---

[5] In relevant part, the 1963 amendment to FRCP 56 added the following language to paragraph (e):

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

*See* Fed. R. Civ. P. 56 advisory committee's note to 1963 amendment.  According to the Advisory Committee's note accompanying the 1963 revision, this language was added to address a line of cases, primarily in the Third Circuit, that limited the effectiveness of summary judgment. *See id.*

The Third Circuit had ruled that summary judgment against a plaintiff must be denied if the pleadings are "well-pleaded" and not merely speculative or conclusory, even if the plaintiff failed to produce substantial evidence to support their position.  Since the purpose of summary judgment is to go beyond the pleadings and evaluate the evidence to determine if a trial is necessary, the Third Circuit's approach, which allowed pleadings to block a justified summary judgment, contradicted this purpose. *Id.*; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) ("While . . . these two sentences were not intended to *reduce* the burden of the moving party, it is also obvious that they were not adopted to *add to* that burden").

regardless of whether the moving party's motion is accompanied by supporting materials negating an opponent's claim, the motion should be granted if "whatever is before the [trial] court demonstrates that" the standard for summary judgment under Rule 56(c) is satisfied. *Id.* The Court emphasized that "[o]ne of the principal purposes" of summary judgment is to address "factually unsupported claims or defenses" effectively. *See id.* at 323-24.[6]

[34]      While *Celotex* establishes a low threshold for a summary judgment movant who does not bear the burden of proof, it still requires the movant to take some action. *Celotex* holds that a movant who does not carry the burden of production may satisfy their initial burden by pointing out that the non-movant has failed to produce sufficient evidence to support an essential element of their claim or defense. *Id.* at 325; Brunet, Parry & Redish, *supra*, § 10:5. However, when the movant claims no admissible evidence supports the non-movant's claims, the non-movant's duty to rebut is not necessarily substantial. *Celotex* permits: (1) the court to consider materials not yet in an admissible form,[7] 477 U.S. at 324; Brunet, Parry & Redish, *supra*, § 10:5, and (2) the non-movant to present minimal evidence to demonstrate a genuine issue of material fact, Brunet, Parry & Redish, *supra*, § 10:5. On remand, the D.C. Circuit in *Celotex* found that presenting a few

---

[6] In *Celotex*, the plaintiff alleged that the death of her husband was due to exposure to the defendants' asbestos products. 477 U.S. at 317. The defendant sought summary judgment, claiming that the plaintiff had not provided evidence of exposure to their products, which was necessary for the plaintiff's case. *Id.* at 320. The plaintiff countered by presenting three documents: (1) a copy of the decedent's deposition from an earlier workmen's compensation proceeding about his exposure to asbestos while working in Chicago; (2) a letter from the decedent's former supervisor, describing asbestos products to which the decedent had been exposed; and (3) a letter from an insurance representative of another defendant, describing asbestos products to which plaintiff's decedent had been exposed. *Id.* at 320, 335-36 (Brennan, J., dissenting), 338 n.3 (Stevens, J., dissenting).

[7] Troublingly, the trial court seems to have misapplied the summary judgment standard as it relates to affidavits. *See* RA, tab 83 at 4-5 (Dec. & Order, May 16, 2023) (finding that the Chos' "attempt to use their own Declarations as probative evidence" was not "particularly convincing"). Rule 56 explicitly allows summary judgment motions to be filed with supporting affidavits. Guam R. Civ. P. 56. We agree with the Third Circuit that "[w]hile we require more than conclusory affidavits to create a genuine issue of material fact, when deciding a motion for summary judgment, 'the evidence of the non-movant is to be believed,' and credibility determinations must be left to the jury." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 541 n.5 (3d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). To the extent the trial court discounted the Chos' affidavits because it did not find them credible, this was inappropriate.

documents was sufficient for the non-movant to meet their burden, allowing the case to proceed to trial. *Id.*; *Catrett v. Johns-Manville Sales Corp.*, 826 F.2d 33, 38-39 (D.C. Cir. 1987). The argument that a movant is entitled to summary judgment on claims they have not addressed at all contradicts the basic principles of summary judgment law. The trial court committed fundamental legal errors when it granted summary judgment for claims on which ABC did not move for summary judgment.

> **2. The trial court's conclusion that the Chos failed to put their claims in issue was incorrect on summary judgment and an abuse of its discretion on reconsideration**

[35]      Although our standard of review for denial of a motion for reconsideration is more deferential, the trial court's decision denying reconsideration also contained serious legal errors. While ABC acknowledges that "the trial court's decision focused on the standing issue," it argues that summary judgment should be affirmed on alternative grounds, asserting that its "motion papers extensively articulated alternative grounds for summary judgment." Appellee's Br. at 8. ABC further contends that summary judgment was proper because the Chos failed "to produce *tangible evidence* in support of their allegations; and further to articulate why such evidence should bar summary judgment." *Id.* We disagree and find that the trial court misapplied the summary judgment standard. The burden did not shift to the Chos to provide evidence for claims not discussed in ABC's motion. Furthermore, even if we assumed that ABC properly moved for summary judgment on the Chos' remaining claims (which it plainly did not), the record shows that the Chos either demonstrated genuine issues of material fact or presented issues of contract interpretation for the court to resolve as a matter of law. The trial court should have either resolved the parties' conflicting interpretations of the contract as a matter of law or recognized that a genuine issue of material fact existed, precluding summary judgment. The trial court was incorrect

when it granted summary judgment on abandonment grounds, and it abused its discretion when it doubled down on this erroneous conclusion on reconsideration.

[36]     Interpreting contract provisions, particularly when the meaning of specific terms is disputed, is a question of law typically reserved for the judge, not the jury. *See Laredo Ridge Wind, LLC v. Neb. Pub. Power Dist.*, 11 F.4th 645, 649 (8th Cir. 2021) (affirming summary judgment in a contract dispute and holding that "[t]he meaning of a contract, and whether a contract is ambiguous, are questions of law" (quoting *Big River Constr. Co. v. L & H Props., Inc.*, 681 N.W.2d 751, 756 (Neb. 2004))).  It is the court's responsibility to determine whether an integrated agreement is unambiguous, and if so, how to construe those terms as a matter of law. *E.g.*, *Blackie v. Maine*, 75 F.3d 716, 721 (1st Cir. 1996); *Great Clips, Inc. v. Hair Cuttery of Greater Bos., L.L.C.*, 591 F.3d 32, 35 (1st Cir. 2010) ("[C]ontracts are construed by the judge unless extrinsic evidence is offered to resolve supposed ambiguity."); *Util. Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 687 (7th Cir. 2004) (affirming summary judgment in a breach of contract suit and noting that "[t]he interpretation of an unambiguous contract is a question of law" and disputes over unambiguous terms are appropriate for summary judgment).

[37]     However, when the contract terms are in dispute, the court must first determine whether the language is ambiguous. *See Duncan v. Muzyn*, 885 F.3d 422, 425-26 (6th Cir. 2018).  To be ambiguous, the contract's terms must be susceptible to at least two "reasonable interpretations." *Id.* at 425 (quoting *Schachner v. Blue Cross & Blue Shield of Ohio*, 77 F.3d 889, 893 (6th Cir. 1996)).  If the contract's language supports multiple equally reasonable interpretations (or no reasonable interpretation), the contract is ambiguous. *Id.*  However, if one interpretation "far better accounts for the language at issue," the contract is not ambiguous. *Id.* at 425-26.  If the court finds the contract ambiguous, interpretation becomes a question for the factfinder, unless "the extrinsic

evidence presented about the parties' intended meaning is so one-sided that no reasonable person could decide to the contrary." *Bank v. Int'l Bus. Machs. Corp.*, 145 F.3d 420, 424 (1st Cir. 1998) (quoting *Den Norske Bank AS v. First Nat'l Bank of Bos.*, 75 F.3d 49, 53 (1st Cir. 1996)); *see also Macey v. Carolina Cas. Ins. Co.*, 674 F.3d 125, 130-31 (2d Cir. 2012) (vacating summary judgment due to contract ambiguity). If the court concludes that the contract language is uncertain or open to multiple meanings, summary judgment is generally inappropriate. *See, e.g.*, *Bank*, 145 F.3d at 424 (noting that "if the contract's terms are ambiguous, 'contract meaning normally becomes a matter for the factfinder'" (quoting *Den Norske Bank*, 75 F.3d at 52)).

[38]　　Here, the parties dispute the meaning of specific Settlement Agreement provisions. Throughout the litigation, the Chos have consistently argued that the Settlement Agreement terms provide multiple remedies for ABC's breach. In their opposition to ABC's second motion for summary judgment, the Chos asserted that the Settlement Agreement "includes multiple sections in which ABC formally agreed to release all of its right to object or oppose immediate and future aspects of the continued development and management of the ABT." RA, tab 74 at 14 (Chos' Opp'n to ABC's 2nd Mot. Summ. J.). The Chos highlighted ABC's obligations under the Settlement Agreement, emphasizing that "ABC withdrew past objections and consented to the Cho Group's ownership of the hotel facilities under the Replacement HPR." *Id.* at 14-15 (citing RA, tab 1 (Compl.), Ex. 1 at 6 ¶ 3.3 (Settlement Agreement)). They further contended that ABC agreed not to oppose any zoning modifications or regulatory permits deemed necessary by the Chos, acknowledged the Tower as a mixed-use condominium, and recognized that market conditions might warrant facility modifications. *Id*. at 15 (quoting RA, tab 1 (Compl.), Ex. 1 at 7 ¶ 3.8, 8 ¶ 3.12 (Settlement Agreement)). The Chos further argued that ABC accepted that the areas they occupied did not directly impact ABC's business and agreed not to oppose their use and ownership

of those areas. *Id.* (quoting RA, tab 1 (Compl.), Ex. 1 at 8 ¶ 3.12 (Settlement Agreement)).  They claimed that ABC also agreed not to challenge the validity of any Settlement Agreement provisions under applicable law.  *Id.* at 16 (quoting RA, tab 1 (Compl.), Ex. 1 at 12 ¶ 5.4 (Settlement Agreement)).  These arguments were made to demonstrate that the Settlement Agreement is a valid, enforceable contract supported by mutual consideration.  The Chos maintained that these provisions collectively provide both legal and equitable remedies for ABC's breach, independent of the disputed "right of refund" provision in paragraph 3.9.  *Id.*  However, the trial court overlooked these assertions when granting ABC's second motion for summary judgment.

[39]     The Decision and Order denying the Chos' GRCP 59 motion characterizes the Chos' opposition to ABC's second motion for summary judgment as merely addressing these claims in passing, leading the trial court to consider them abandoned.  RA, tab 111 at 4-5 (Dec. & Order).  This conclusion seems based on how many times the term "injunctive relief" was used in the Chos' opposition to ABC's second motion for summary judgment, rather than on the substance or context of their arguments.  *See id.* ("Plaintiffs mention 'injunctive relief' only once in the introduction of their Opposition, and offer no substantive argument in explicit support of their injunctive claim, nor do they mention anything involving injunctive relief or any injunction anywhere else in their Opposition.").  To reach this conclusion, the trial court also disregarded the Chos' arguments at the hearing for the second motion for summary judgment, where they "specifically advocated the injunctive relief claim, and argued that the Chos' Complaint was misconstrued because it was far from limited to their claim to Hibari's right of refund."  Appellant's Br. at 17 (May 15, 2024).  During the summary judgment hearing, the Chos stated:

> This complaint isn't Count One, give me the refund.  That's not what it is.  They don't want to read it that way, they don't want to go through the four counts, but there are four counts.  One, injunctive relief.  Stop what you're doing.  Stop it.  I'm going to enjoin you.  You can't do what you are doing.  Two, alternatively, a money

damages claim for breach of contract. Part three, breach -- Count three, breach of covenant of good faith and fair dealing. That's an entirely separate count. And, four, unjust enrichment. It's almost so badly mischaracterized as a right of refund question that they don't want to consider any of the other three counts, but in short there's much more to the claims of the Plaintiffs than just a regular refund . . . .

Transcript ("Tr.") at 14-15 (2nd Mot. Summ. J. Hr'g, Feb. 15, 2023). The Chos repeat this argument on appeal, emphasizing the trial court's failure to recognize their assertions for injunctive relief in their opposition to ABC's second motion for summary judgment:

> The Chos did oppose ABC's Second Motion for Summary Judgment based on the arguments that ABC actually made. The Chos argued that the Law of the Case Doctrine precluded review of the trial court's Decision and Order of August 2, 2018, which had determined as a factual and legal matter that ABC had waived its right to protest to the GLUC. RA, tab 74 at 10 (Chos' Opp'n to ABC's 2nd Mot. Summ. J.). The Chos also argued that ABC's Motion was an improper request for reconsideration in that it repeated previously made arguments in violation of CVR [Guam Superior Court Civil Rule] 7.1(i).[8] *Id.* at 11. The Chos then summarized the arguments that had led the trial court to find that ABC had waived its right to protest in its August 2, 2018 Decision and Order. *Id.* at 13-17. *All of these arguments were in defense of the Chos' injunctive relief claim*.

Appellant's Br. at 17 (emphasis added). The Chos highlight that the anti-SLAPP motion and earlier proceedings focused on the claim for injunctive relief. The Chos point out that if they had "not requested injunctive relief, there would have been no cause for ABC to file an anti-SLAPP Motion." *Id.* at 8.

---

[8] Local Rules of the Superior Court of Guam Civil Rule ("CVR") 7.1(i) provides:

> (i) Motion for Reconsideration. A motion for reconsideration of the decision on any motion may be made only on the grounds of
>
>> (1) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or,
>>
>> (2) the emergence of new material facts or a change of law occurring after the time of such decision, or,
>>
>> (3) a manifest showing of a failure to consider material facts presented to the Court before such decision.
>
> No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion.

CVR 7.1(i).

**[40]**    Several issues were directly raised before the trial court in ABC's motion for summary judgment and the Chos' opposition, which should have been addressed on the merits, as this court had instructed in its prior opinion. *See Alupang I*, 2020 Guam 10 ¶¶ 15, 17-19; *see also Sec'y, Vt. Agency of Nat. Res. v. Irish*, 738 A.2d 571, 580 (Vt. 1999) (holding that trial court's broad discretion "did not include the authority to simply decline to rule" on critical issue and that trial court has a "fundamental duty" to "resolve the issues before it").

**[41]**    All of ABC's challenges to the Chos' case concern disputes over interpreting specific terms in the Settlement Agreement, particularly paragraphs 3.1, 3.8, 3.10, and 3.12. Without resolving any of the disputes raised by the parties, we conclude that the Chos' brief opposing ABC's second motion for summary judgment sufficiently challenged ABC's interpretation of the Settlement Agreement, preventing abandonment of its claims during summary judgment proceedings. We now turn to the specific provisions central to the parties' claims.

### a. Paragraph 3.1

**[42]**    Paragraph 3.1 of the Settlement Agreement stipulates that "ABC shall, without delay, sign a new Replacement HPR or amendment to the HPR, so long as such document is similar in material respects to the Replacement HPR previously submitted to the [Land Use Commission]." RA, tab 1 (Compl.), Ex. 1 at 6 ¶ 3.1 (Settlement Agreement). The Chos contend this provision applies to the Proposed Amendment, while ABC argues that it does not. The dispute centers on whether the Proposed Amendment is "similar in material respects to the Replacement HPR." In denying ABC's first motion for summary judgment, the trial court concluded that paragraph 3.1 applies to the Proposed Amendment, finding it is not materially different from the Replacement HPR. RA, tab 40 at 7 (Dec. & Order). However, ABC asserts this determination was effectively overridden by this court's ruling in *Alupang I*, which, without resolving the issue, noted that it is "unclear

whether section 3.1 of the Settlement Agreement . . . even applies to the [Proposed Amendment]." RA, tab 72 at 15 (Mem. P. & A. Supp. ABC's 2nd Mot. Summ. J.) (quoting RA, tab 40 at 7 (Dec. & Order)).

[43]     To support its argument that the Proposed Amendment materially differs from the Replacement HPR, ABC cites Steven Kasperbauer's declaration, in which he expressed concerns that the changes in the Proposed Amendment "could not meet Guam minimum density and parking requirements because of the absence of street parking and the propensity of condo residents to have one or more vehicles per unit," and that his tour company had "experienced a sharp decrease in tour sales due to condo usage." *Id.* at 16 (citing RA, tab 20 at 3 (Kasperbauer Decl., Feb. 8, 2018)). However, it is unclear how these assertions relate to the material similarity between the Replacement HPR and Proposed Amendment.

[44]     In response to ABC's claims regarding materiality, the Chos argued that the Proposed Amendment is "not materially different" from the Replacement HPR, asserting that the Proposed Amendment "intends to increase the number of condominium units to 138 which is approximately a 5% operational increase according to Defendants' written objections made to the Guam Land Use Commission ('GLUC')." RA, tab 74 at 17-18 (Chos' Opp'n to ABC's 2nd Mot. Summ. J.) (quoting RA, tab 32 at 1 (Hee K. Cho's 1st Decl.)). Whether the Proposed Amendment is materially similar to the Replacement HPR under paragraph 3.1 remains unresolved. *Id.* at 18 n.51. The trial court should have either resolved the parties' conflicting interpretations of the meaning of paragraph 3.1 as a matter of law if it found it unambiguous or recognized an ambiguity, precluding summary judgment. *See Bank*, 145 F.3d at 424.

//

//

### b. Paragraph 3.8

[45]  Beyond paragraph 3.1, several other provisions of the Settlement Agreement may limit ABC's right to protest the Chos' Proposed Amendment to the Replacement HPR.  *See* RA, tab 40 at 7-8 (Dec. & Order); *Alupang I*, 2020 Guam 10 ¶ 15.  For example, paragraph 3.8 of the Settlement Agreement states:

> ABC shall not oppose any applications by the [Tower Owners] Association, or by any other named Defendant herein, for conditional use permits or modifications thereto or zoning variances or other regulatory permits or action *as they may deem be [sic] requisite or appropriate* to the lawful construction, maintenance and operation of the Alupang Beach Tower *as presently existing* and to conform such operations to applicable law.  ABC shall not solicit any other person or entity to oppose any such applications, and shall not interfere with or oppose the solicitation by any person including any party to this Agreement of support from any other person whether or not a party to this Agreement for approval of any such application, or for joinder therein.

RA, tab 1 (Compl.), Ex. 1 at 7 ¶ 3.8 (Settlement Agreement) (emphases added).  The Chos argue that the phrase "as they may deem [to] be requisite or appropriate" grants them the discretion to modify the Replacement HPR as they deem necessary for the Tower's best use and operation.  RA, tab 74 at 4 (Chos' Opp'n to ABC's 2nd Mot. Summ. J.).  However, ABC contends that paragraph 3.8 is inapplicable because it applies only to the Tower "as presently existing" and does not unambiguously bar opposition to future permit filings.  RA, tab 72 at 18 (Mem. P. & A. Supp. ABC's 2nd Mot. Summ. J.).  Given the dispute over the interpretation and applicability of paragraph 3.8, the trial court should have either attempted to interpret this provision or recognized that a genuine issue of material fact exists, precluding summary judgment.

### c. Paragraph 3.10

[46]  Paragraph 3.10 of the Settlement Agreement also has language that may limit ABC's ability to protest the Proposed Amendment.  That provision states:

> ABC agrees that ABC will not object to or assert any claims relating to the type of business operations of any of the named Defendants herein, or of the [Tower Owners] Association at Alupang Beach Tower. ABC, however, reserves the right to pursue indemnity claims against the Defendants in the event that third parties (who are not parties to the settlement and release) file claims against ABC based upon the activities of the Defendants.

RA, tab 1 (Compl.), Ex. 1 at 8 ¶ 3.10 (Settlement Agreement). The trial court interpreted paragraph 3.10 as ABC agreeing "to not oppose the types of businesses operated by Plaintiffs on the ABT development." RA, tab 40 at 7 (Dec. & Order). However, ABC argues that "strictly construed, Paragraph 3.10 more narrowly pertains to 'business operations' of the ABT association." RA, tab 72 at 18-19 (Mem. P. & A. Supp. ABC's 2nd Mot. Summ. J.). According to ABC, paragraph 3.10 excludes protests related to "the removal of physical hotel facilities, inadequate parking and excessive density at ABT," reasoning that these are not part of the day-to-day business operations at the Tower. *Id.* To support this argument, ABC cites the Business Dictionary's definition of "business operations" as "[a]ctivites involved in the day to day functions of the business conducted for the purpose of generating profits." *Id.* at 19.

[47]   In response, the Chos rely on the trial court's earlier ruling regarding paragraph 3.10, which described the conversion of the Tower contemplated in the Proposed Amendment as a business decision. See RA, tab 74 at 17 (Chos' Opp'n to ABC's 2nd Mot. Summ. J.) (finding that the Chos' proposed conversion from a condominium/hotel/commercial mixed-use facility to a condominium/commercial mixed-use facility was a business decision, and that changes to the Replacement HPR, like those in the Proposed Amendment, fall within the Settlement Agreement's scope (citing RA, tab 40 at 8 (Dec. & Order))). There is a dispute over whether the proposed conversion in the Proposed Amendment is a "business decision" within the meaning of paragraph 3.10. The trial court should have addressed the conflicting interpretations of paragraph 3.8's

meaning and applicability and either resolved the conflict as a matter of law or recognized that a genuine issue of material fact existed. *See Bank*, 145 F.3d at 424.

### d. Paragraph 3.12

[48]     The parties also dispute the scope of paragraph 3.12 of the Settlement Agreement, which provides:

> ABC agrees and acknowledges that the ABT is a mixed use condominium including commercial uses such as those conducted by ABC, residential and hotel uses, restaurant and bar uses, as well as other commercial activities. Market or other economic conditions may warrant modifications to facilities within the ABT. CU2[9] is in a building *largely separate from and distinct* from the other structures of the Alupang Beach Tower and located on the northwest side of the main tower. CU2 does not rely upon the main lobby areas of the main tower for access, and use of common elements or portions of the project on the south side of the main tower do not directly impact ABC's use of CU2 or the Adjacent Property.[10] ABC and the parties agree that the areas presently occupied and used by the Cho Group are as set forth on the sketch attached hereto as Exhibit G. *ABC agrees not to contest the Cho Group's occupation, use, and ownership of such areas*, or the [Tower Owners] Association's or its officers' or directors' action or inaction with respect to such occupation and use, nor to contest any arrangements between the [Tower Owners] Association and the Cho Group, to permit, document or deal with the Cho Group's occupancy and use of such areas.

RA, tab 1 (Compl.), Ex. 1 at 8 ¶ 3.12 (Settlement Agreement) (emphases added). The Chos argue that ABC's agreement not to oppose the Chos' "occupation, use, and ownership" applies to all the areas the Chos occupy in the Tower. RA, tab 74 at 15 (Chos' Opp'n to ABC's 2nd Mot. Summ. J.) (quoting RA, tab 1 (Compl.), Ex. 1 at 8 ¶ 3.12 (Settlement Agreement)). In contrast, ABC contends that its agreement "only pertains to *specified areas* of ABT, described as 'largely separate from and distinct from other structures of the Alupang Beach Tower.'" RA, tab 72 at 19 (Mem. P. & A. Supp. ABC's 2nd Mot. Summ. J.) (quoting RA, tab 1 (Compl.), Ex. 1 at 8 ¶ 3.12

---

[9] "CU2" refers to Commercial Unit No. 2, which is the Tower unit where ABC holds a long-term leasehold interest. RA, tab 1 (Compl.), Ex. 1 at 2 ¶ C (Settlement Agreement).

[10] "Adjacent Property" refers to specific real estate in which ABC holds an interest, located immediately next to the Tower, and identified as Lot No. 2017-R-6, Lot No. 2016, and Lot No. 2016-1-NEW. *Id.*

(Settlement Agreement)). ABC's selective reading of this provision directly challenges the Chos' interpretation, highlighting the inconsistency between the parties' constructions of paragraph 3.12. This disagreement exposes another conflict in deciphering the Settlement Agreement's terms, and the trial court should have either attempted to resolve this conflict over contract interpretation or recognized it as a genuine issue of material fact, barring summary judgment. *See Bank*, 145 F.3d at 424.

### 3. The Chos did not rest on their pleadings

[49] ABC asserts that "the Chos presented no evidence whatsoever regarding interpretation of the contract at issue." Appellee's Br. at 11. Instead, ABC contends that the "only evidence they mustered addressed solely the issue of standing to recover the consideration paid by Hibari" and that "[t]he Chos were content to rest on the allegations of their Complaint regarding their remaining claims." *Id.* at 12. In support of this, ABC cites *Guerrero v. McDonald's International Property Co.*, 2006 Guam 2, as controlling precedent. Appellee's Br. at 12 (citing *McDonald's*, 2006 Guam 2 ¶ 26). In *McDonald's*, a tort plaintiff "essentially rested on her pleadings in response to a summary judgment motion," which the trial court granted. *Id.* (citing *McDonald's*, 2006 Guam 2 ¶ 26). There, this court observed that a plaintiff "cannot survive summary judgment and maintain a case by a mere allegation" without presenting "evidence of the basic facts" that would support "even an inference" of negligence. *McDonald's*, 2006 Guam 2 ¶ 26. However, the evidentiary standards for a negligence claim differ significantly from those in breach of contract disputes. Therefore, it is inappropriate to analogize breach of contract claims between commercial entities to the "slip-and-fall" scenario in *McDonald's*.

[50] In further contrast to the *McDonald's* "slip-and-fall" scenario, the Chos provided adequate evidence opposing summary judgment. Attached to their complaint were 80 pages of documents,

including: (1) the Settlement Agreement, (2) a 2004 letter from ABC's attorney to the Land Use Commission withdrawing ABC's objections to the Replacement HPR, (3) a stipulation of dismissal of the 2004 litigation, (4) a 2016 letter from ABC's attorney to the Land Use Commission protesting the Proposed Amendment,; and (5) a demand letter from the Chos' attorney to ABC's attorney alleging multiple breaches of the Settlement Agreement by ABC. RA, tab 1 (Compl.), Ex. 1 (Settlement Agreement), Ex. 4 (ABC Protest Letter to GLUC, Apr. 13, 2016), Ex. 5 (Demand Letter, May 9, 2017). Unlike tort cases, which often rely on witness testimony and physical evidence to establish a breach of duty, a breach of contract is typically shown using the written contract itself and related materials. *See, e.g.*, *Torres v. Torres*, 2005 Guam 22 ¶ 36 ("[A] practical construction placed by the parties upon the instrument is the best evidence of their intention." (quoting *Universal Sales Corp. v. Cal. Press Mfg. Co.*, 128 P.2d 665, 672 (Cal. 1942))). Together with the documents attached to the complaint, the Chos also submitted the Purchase Agreement opposing ABC's motion for summary judgment. The Purchase Agreement, through which Hibari conveyed its entire interest in the Tower to the Chos just months before ABC filed its initial lawsuit, could be dispositive in determining (1) whether the right of refund in the Settlement Agreement passed from Hibari to the Chos, and (2) whether the parties intended the Settlement Agreement to apply to subsequent amendments to the HPR. *See* RA, tab 75 at 1-21 (Hee K. Cho's 2nd Decl.), Ex. A (Purchase Agreement).

## C. Entitlement to Right of Refund Payment

[51]    The trial court erroneously treated the question of the Chos' right to relief under the Settlement Agreement as a jurisdictional issue rather than a merits-based determination. Given our decision to vacate the grant of summary judgment for this legal error, we need not address the right of refund issue on appeal. However, on remand, the trial court should apply the correct legal

standards and carefully review all materials and evidence submitted in reconsidering this matter.

## V.  CONCLUSION

[52]     The trial court's decision to grant summary judgment was based on an incorrect interpretation of traditional standing, which did not address the Chos' breach of contract claim on its merits.  This error was clear throughout the trial court's analysis.  In line with this court's prior instructions, the trial court should have first determined whether the Proposed Amendment is materially similar to the Replacement HPR under the terms of the Settlement Agreement.  If so, it should have then assessed whether any provisions limiting ABC's conduct apply.  Only after making these determinations could the court evaluate the Chos' right to relief for ABC's alleged breach of the Settlement Agreement.  We **REVERSE** and **REMAND** for further proceedings not inconsistent with this opinion.


/s/
F. PHILIP CARBULLIDO
Associate Justice

/s/
KATHERINE A. MARAMAN
Associate Justice


/s/
ROBERT J. TORRES
Chief Justice